STATE OF IOWA v. DUDLEY GIBSON, Appellant.

**Larceny From Building:** BUILDING DEFINED: *Jury Question.* Whether a corn-crib, one hundred and fifty feet, by twelve feet, having a roof, the only opening for entrance to which was a place where a board had been left off near the roof, and constructed upon heavy posts sunk into the ground, on which joists were nailed to support the floor, the sides being constructed by nailing fencing boards to the post, the boards near the bottom being close together, and the others about one and one-half inches apart, is a building, within the meaning of Code, 3894, which punishes the breaking and entering of a "building," is a jury question, where the indictment alleges that the crib was a building, and contains no description which would justify a court in holding that it was not.

*Appeal from Fremont District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, APRIL 8, 1896.

THE defendant was convicted of the crime of breaking and entering a building, with the intent to commit a public offense; and from the judgment, which required that he be imprisoned in the state penitentiary at Ft. Madison, at hard labor, for the term of one year, and pay the costs, he appeals.— *Affirmed.*

*W. E. Mitchell* for appellant.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

ROBINSON, J.—The indictment charges that the defendant did, on the twenty-eighth day of March, 1895, "willfully and feloniously break and enter a certain building, to-wit, a corncrib, belonging to, and the property of, one M. U. Payne, said building being a place in which goods and valuable things, to-wit, corn, were kept for use, sale, and deposit by the said M. U. Payne, with the felonious intent on the part of the said Dudley Gibson, * * * then and there feloniously to take, steal, and carry away, the said goods and valuable things of the said M. U. Payne, and then and there, to commit a public offense, to-wit, larceny." The evidence for the state shows that, at the time stated in the indictment, the defendant broke into a structure known as a "corncrib," and removed therefrom corn. The crib and contents were owned by one Payne, and the acts of the defendant were without authority, and in violation of law. The crib was about one hundred and fifty feet long, twelve or thirteen feet wide inside, eleven feet high on one side, fourteen feet high on the other, and was nearly filled with corn. It was made by setting two rows of oak posts about thirteen feet apart. The posts were from six to ten inches in diameter, and were set three feet apart in each row. Each post was joined to the corresponding post in the opposite row by a joist two by twelve inches in size, and fourteen feet long, which was nailed to the bottoms of the posts. On the joists were nailed boards an inch and a half or two inches thick, and twelve inches wide, which made the floor of the crib. The sides and ends were made by nailing to the posts fencing boards, which were six inches wide and one inch thick. Those boards were placed close together from the floor, to a height of three or four feet, and above that were so placed as to leave spaces from an inch to an inch and

a half between the boards. The crib was roofed with flooring, tongued and grooved and painted. The boards on one side of the crib were nailed in the manner stated, from the floor to the roof. On the other side the boards were nailed in like manner, excepting that a board was left out at a distance of about a foot and a half from the roof. The crib did not contain any doors or windows. The defendant, at the time stated, chopped off with an ax the end of a bottom board, then started the corn to running out, by pulling out some of it with his hands. He then brought his team to the crib, and commenced loading his wagon with the corn. When he had obtained about eighteen bushels, he was arrested. There is no controversy in regard to any of these facts.

When the evidence for the state had been submitted, the defendant asked the court to direct a verdict of not guilty, on grounds which may be stated as follows: (1) That the building described in the indictment and evidence, was not a building within the meaning of the statute under which the indictment was found; (2) that the indictment does not charge any crime; and (3) that the evidence was not sufficient to warrant a verdict against the defendant. The motion was overruled, and the grounds upon which it was based are urged against the validity of the judgment rendered. The indictment was found under section 3894 of the Code, which contains the following: "If any person, with intent to commit any public offense, * * * at any time break and enter any office, shop, store, warehouse, railroad car, boat or vessel, or any buildings in which any goods, merchandise, or valuable things are kept for use, sale or deposit, he shall be punished by imprisonment in the penitentiary, not more than ten years, or by fine not exceeding one hundred dollars, and imprisonment in the county jail not more than one year."

I. The appellant contends that a corncrib is not a building, within the meaning of that statute. Whether it is, depends upon its construction. It cannot be said, as a matter of law, that a corncrib is not a building. The indictment alleges that the crib in question was a building, and does not contain any description which would justify a court in holding that it was not. Therefore, if there was evidence to sustain that allegation, the question as to its real character was properly submitted to the jury for its determination. See *State v. Smith*, 28 Iowa, 565.

II. A "building" has been defined to be "a fabric, or edifice, constructed for use or convenience; as a house, a church, a shop. It must be permanent, and designed for the habitation of men or animals, or the shelter of property." 2 Am. & Eng. Enc. Law, 601. It was said in *Railroad Co. v. Vanderpool*, 11 Wis. 119, that "the word 'building,' as a noun, has a common, well-understood meaning, * * * and includes only those which have a capacity to contain, and are designed for the habitation of man or animals, or the sheltering of property." We are not prepared to assent to the statement that a structure, to be a building, must be permanent; nor do we concede that the definition last quoted is sufficiently broad to include all structures which may rightfully be classed as buildings under the statute under consideration; but we are of the opinion that the jury were authorized to find that the crib in question was a building, within the meaning of either of the definitions given. It was so constructed as to be of a permanent character, and was specially designed for the storage of corn, which is a commodity of value for use and sale. That the crib was a building, within the meaning of the statute, is so clear that the jury would not have been justified in finding that it was not. The appellant relies upon the cases of *Wood v. State*, 18 Fla. 967, and *People*

*v. Richards* (N. Y. App.) (15 N. E. Rep. 371). An examination of these cases shows that they were determined upon grounds not applicable in this case.

The objections to the judgment of the district court are not well founded, and it is AFFIRMED.