### PEOPLE v. WILLIAMS.

1. WORDS AND PHRASES—BUILDING.

The term *building*, in its broadest sense, means an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed.

2. LARCENY—BUILDING—TIRE RACK AT GASOLINE SERVICE STATION.

Structure 7'7" high, 15'1" long, and 33" wide, constructed of metal, attached to the land, bolted down to cement, entirely closed, a covered shed, having overlapping doors with a steel bar coming down through the outside door and a padlock attached through the steel rod, used for the storage and display of tires, and having a capacity of 100 tires, located 38 feet from main gasoline service station building on the same premises *held*, a building within meaning of statute making it a felony to commit "the crime of larceny by stealing in any * * * gasoline service station * * * or any building" (CL 1948, § 750.360).

3. SEARCHES AND SEIZURES—ARREST—PROBABLE CAUSE.

Information obtained by police officer at 3:30 a.m. relative to tires found in trunk of defendants' car and circumstances of the discovery *held*, sufficient to give rise to probable cause for belief a crime had been committed by defendants and warranted their arrest and search of them and their car.

4. SAME—MOTION TO SUPPRESS—TESTIMONY AT TRIAL.

The consideration of the information which had been obtained

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 9 Am Jur, Buildings § 2.
[2, 7] 32 Am Jur, Larceny § 45.
[3] 47 Am Jur, Searches and Seizures §§ 18–20.
[4, 5] 20 Am Jur, Evidence § 396.
[6] 20 Am Jur, Evidence § 1256.

by police officers before they had arrested defendants and searched them and their car must be limited to the information which had theretofore been obtained, where illegality of the search is questioned before trial and the illegality raised by motion to suppress such evidence, amplifying testimony taken later at the trial not being usable in making determination as to illegality of the arrest and search.

5. LARCENY—SUPPRESSION OF EVIDENCE.

Motions to suppress evidence in prosecution for larceny from a building *held,* properly denied, where testimony adduced on preliminary examination was ample to sustain the legality of the arrest and search which had been made by officers without a warrant (CL 1948, § 750.360).

6. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE—GUILT BEYOND A REASONABLE DOUBT.

The test of sufficiency of evidence to justify conviction in a criminal case is not whether the finding is contrary to the great weight of the evidence, but rather, is it ample to warrant a finding of guilt beyond a reasonable doubt.

7. LARCENY—BUILDING—EVIDENCE.

Testimony presented in prosecution for larceny from a building *held,* enough to support finding of guilt beyond a reasonable doubt, where defendants were found in possession of 5 tires shortly after they had been stolen from a tire rack on which padlock had been sawed apart and 1 defendant had a hacksaw in his pocket when arrested about 3:30 a.m. (CL 1948, § 750.360).

Appeal from Recorder's Court of Detroit; Murphy (George A.), J. Submitted June 14, 1962. (Docket No. 54, Calendar No. 49,599.) Decided December 4, 1962. Certiorari denied by the supreme court of the United States May 13, 1963.

Edward John Williams and Evelyn Walker were convicted of larceny from a building. Affirmed.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Assistant Prosecuting Attorney, for the people.

*Albert A. Goldfarb,* for defendants.

Dethmers, J. Defendants were convicted of larceny in a building. The parties agree that the applicable statute is CL 1948, § 750.360 (Stat Ann 1954 Rev § 28.592), which reads:

"Any person who shall commit the crime of larceny by stealing in any dwelling house, house trailer, office, store, gasoline service station, shop, warehouse, mill, factory, hotel, school, barn, granary, ship, boat, vessel, church, house of worship, locker room or any building used by the public shall be guilty of a felony."

The structure in which the people allege the larceny occurred is described as being 7 feet, 7 inches high, 15 feet, 1 inch long, and 33 inches wide. According to the owner's testimony it is constructed of metal, attached to the land, bolted down to cement, entirely enclosed, a covered shed, it has overlapping doors with a steel bar coming down through the outside door and a padlock attached through the steel rod. In it tires were stored and displayed in 2 tiers, with a capacity for 100 tires. It had been constructed on the premises and located about 38 feet from the main gasoline service station building located on the same premises. On the night in question the doors had been closed and locked, but afterwards the mentioned rod on the door had been sawed apart, the lock removed, the door opened, and 5 tires taken.

Is the structure in which the larceny was committed a building within the meaning of the quoted statute? Defendants say it is merely a tire rack. They suggest that it comes within the meaning of CL 1948, § 750.114 (Stat Ann § 28.309), making it a misdemeanor to break and enter, with intent to commit the crime of larceny, "any outside show case or other outside enclosed counter used for the display of goods." We think the structure here involved is considerably more than a show case or counter in the ordinarily accepted sense of the terms.

Defendants cite *Rouse* v. *Catskill & N. Y. Steamboat Co.,* 59 Hun (66 SC NY) 80 (13 NYS 126), in which it was held that a vessel is not a building within the meaning of an ordinance prohibiting the sale of liquor in a building; *Town of Union* v. *Ziller,* 151 Miss 467 (118 So 293, 60 ALR 1155), in which a metal billboard was held not to be a building under an ordinance prohibiting metal buildings; *Truesdell* v. *Gay,* 79 Mass 311, in which a wall around 3 sides of the stack of an iron furnace to protect the stack from earth sliding down a hill behind it is not a building within the lien law, to permit a lien to attach to it; *Whiteley* v. *Mayor and City Council of Baltimore,* 113 Md 541 (77 A 882), in which it was held that, in a street opening proceeding in which it was required that a map be filed showing lots and buildings to be taken, it was not necessary to show a portable schoolhouse thereon because it was intended to be there only temporarily and was not a building to be taken or destroyed for the street opening; *Bailey* v. *Ohio,* 26 Ohio Cir Ct 375, in which a chicken coop 37–3/4 inches by 38 inches by 2 feet high, which was moved from place to place and not attached to the ground, was not a building within the meaning of a statute defining burglary as breaking and entering any building, because lacking any permanency of location as a structure. These are of scant assistance to defendants here with respect to the structure of the size, permanent character and type of construction and attachment to the realty here involved.

In *Truesdell* the following was said:

"The word 'building' cannot be held to include every species of erection on land, such as fences, gates or other like structures. Taken in its broadest sense, it can mean only an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament or use, constituting

a fabric or edifice, such as a house, a store, a church, a shed."

This structure comes well within this definition of a building.

In *Sanchez* v. *People,* 142 Colo 58 (349 P2d 561, 78 ALR2d 775), we find in the syllabi (P2d) the following:

"1. All stationary structures within State, no matter of what subtance they may be constructed, are within term 'building' as used in burglary statute, so long as they are designed for use in position in which they are fixed."

"2. Although a telephone booth may be only a closet by dictionary definition when within another structure, it is a 'building' within purview of burglary statute when set apart."

"4. Under statute defining burglary as entry with felonious intent into any building, defendant who was prying cover off coin box in outside telephone booth was guilty of 'burglary.' "

By the same token, whatever term might be applicable to the structure here involved if it were inside another building, set apart and outside, as it was, it was a building within the meaning of the applicable statute.

Was evidence taken by officers from defendants' car (5 automobile tires) unlawfully seized and, therefore, should it have been suppressed as such upon defendants' motion to suppress filed and heard by the court in advance of trial?

At the preliminary examination the arresting officer testified, in substance, that at about 3:30 a.m., while assigned to scout a certain area, he received radio instructions to go to a specific location because of a report of the presence there of a suspicious looking man; that the officer went as directed and saw a citizen on the sidewalk who told him that he had seen a suspicious man rolling a new, packaged or wrapped

tire on the street toward an automobile still parked nearby and that the man had placed the tire either in the trunk or under the rear end of the car; that he, the officer, thought this might mean that the tire had been stolen because at that hour of the night no tire sales place was open in that neighborhood in which a new tire might be purchased; that, in consequence, he shined a flashlight into the car and found the 2 defendants hiding in the front of the car, lying in a prone position; that he thought the tire might be in the car; that he then asked for the key to the trunk, but defendants said they had not had one for years; that the officer asked the male defendant what he had done with the tire he had been rolling down the street and that he denied having it; that he then arrested defendants and searched them; that in the male defendant's pocket he found a pair of pliers, a paring knife, tan gloves, and a hacksaw; that after taking defendants and the car a report came about the 5 tires having been stolen from the structure above described; that thereafter the officers gained access to the trunk through the rear seat and found 5 new tires later identified by the owner as those taken from said structure, the tires having marked thereon the name and location of another gasoline station in which he was a partner.

We think the above was sufficient to give rise to probable cause for the officers to believe that a crime had been committed by defendants and warranted the arrest and search of defendants and subsequent search of the car. A reasonable mind could hardly have concluded otherwise on the basis of such knowledge and information.

Defendants seek to inject into the consideration of this problem testimony later taken on trial, which they urge as refuting the officers' testimony at the examination bearing on that question of probable cause and validity of the search and seizure and,

hence, admissibility of the tires into evidence. This is not permissible. In *People* v. *Taylor*, 341 Mich 570, and cases cited therein, we have held that the illegality of seizure of evidence, where such illegality is known before trial, must first be raised by a timely motion to suppress the evidence made before trial. Here the facts relating to the alleged illegality of the search and seizure were as well known to defendants at the time made as at time of trial. Timely motion in advance of trial was, therefore, required. It was so made, but denied before trial on the basis of the testimony adduced at the examination. In *People* v. *Zeigler*, 358 Mich 355, we said:

"What about probable cause in the case at bar? The only showing before the circuit court on the motion to suppress consisted of the testimony presented at the preliminary examination. Amplifying testimony later taken at trial cannot be considered. We are limited to that taken at the examination. *People* v. *Miller, supra.*"

In *People* v. *Miller*, 245 Mich 115, the following appears:

"Determination of motions to dismiss a criminal charge against accused and to suppress the evidence obtained by a search of accused's automobile rests upon the showing at the preliminary examination, and therefore testimony later taken on the trial, amplifying the circumstances of the search, may not be considered by the Supreme Court in reviewing denial of the motions." Syllabus 1.

In *People* v. *Willis*, 243 Mich 164, the second syllabus contains the following:

"Where the matter of the search and its legality was gone into before the trial, upon motion to suppress the evidence obtained thereby, and the motion was denied, the matter should not again be gone into on the trial, but the prosecution had a right to offer

the liquor in evidence, and the jury were in no way concerned with the manner in which it had been secured, and the same rule applies in trial before the court without a jury."

To the same effect are *People* v. *Kerwin,* 234 Mich 686, and *People* v. *Kramer,* 260 Mich 94.

The trial court did not err in denying motions to suppress evidence.

Finally, defendants say the finding of guilt by the trial judge is contrary to the great weight of the evidence. That voices, of course, a civil case test. The question, properly stated (*People* v. *Moore,* 306 Mich 29), is whether the evidence was ample to warrant a finding of guilty beyond a reasonable doubt of the crime charged. In *Gablick* v. *People,* 40 Mich 292, this Court said:

"Possession of stolen property, if immediately subsequent to the larceny, may sometimes be almost conclusive of guilt (see [*People* v. *Walker,* 38 Mich 156]); but the presumption weakens with the time that has elapsed, and may scarcely arise at all if others besides the accused have had equal access with himself to the place where it is discovered."

Here defendants had possession shortly after the offense must have been committed, minutes after a man was seen rolling a new, wrapped tire to the car. It does not appear that anyone other than defendants had had access to the car before the officers took it into possession nor thereafter until they gained access, through taking apart the back seat, into the trunk and found the 5 tires, identified by the owner as stolen from his place of business. The fact that defendants were hiding in the car, that they denied having had a key to the trunk though the 5 freshly stolen tires were soon thereafter found therein, that one defendant had a hacksaw in his pocket and that the bracket to which the padlock was at-

tached had been sawed apart, testimony as to all of this adds up, it seems to us, to enough to support a finding of guilt beyond a reasonable doubt.

Affirmed.

Carr, C. J., and Kelly, Souris, and Otis M. Smith, JJ., concurred with Dethmers, J.

Black and Kavanagh, JJ., concurred in result.

Adams, J., did not sit.