PEOPLE *v.* CLARK

1. CRIMINAL LAW — EVIDENCE — SUPPRESSED — FACTUAL DETERMINA-
TION — APPEAL AND ERROR.

The Court of Appeals cannot determine whether there exists any
basis in fact for a claim that medical records were wrongfully
suppressed by the people's failure to comply with defendant's
alleged request for the production of the records relating to
his treatment of a patient for whose manslaughter defendant
was convicted, where the matter of the production of the
medical records was never presented to the trial court for
full appraisal.

2. HOMICIDE—INVOLUNTARY MANSLAUGHTER.

Involuntary manslaughter is the killing of another without malice
and unintentionally but in doing some unlawful act not amount-
ing to a felony nor naturally tending to cause death or great
bodily harm, or in negligently doing some act lawful in itself,
or by the negligent omission to perform a legal duty.

3. HOMICIDE—MANSLAUGHTER—INDICTMENT AND INFORMATION—SUF-
FICIENCY—GROSS NEGLIGENCE.

An information which specifically charges defendant with gross
and culpable negligence and then specifically pleads the act
which constitutes the gross negligence is sufficient, for it fully
and fairly informs the defendant of the charge of manslaughter
against him (MCLA § 750.321).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error §§ 518, 519.
  5 Am Jur 2d, Appeal and Error §§ 603, 604.
[2] 40 Am Jur 2d, Homicide § 70.
[3] 41 Am Jur 2d, Indictments and Informations § 103.
[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[5] 40 Am Jur 2d, Homicide § 99.
  38 Am Jur, Negligence § 332 *et seq.*
  41 Am Jur, Physicians and Surgeons.§ 138.
  Homicide: improper treatment of disease. 9 ALR 210.
  Malpractice: duty and liability of anesthesist. 52 ALR2d 142.

4. Criminal Law—Appeal and Error—Failure to Preserve Question for Review.

> The Court of Appeals will not review matters not properly preserved for appeal.

5. Homicide—Manslaughter—Evidence—Sufficiency.

> Evidence that failure to constantly supervise a patient being infused with sodium pentothal was violative of accepted medical standards, that every medical student and medical doctor was aware or should be aware of the precautions to be taken, that the manufacturer's instructions detailing the necessary precautions were discarded by the defendant, that a standard reference book in the defendant's library detailed procedures for the use of the drug, and that defendant did not follow these procedures and failed to maintain adequate resuscitative equipment was sufficient, if believed by the jury, to prove knowledge of the extreme risk involved in defendant's conduct and find defendant guilty of manslaughter, assuming that proof of knowledge of the extreme risk involved is necessary to sustain a conviction (MCLA § 750.321).

Appeal from Oakland, William John Beer, J. Submitted Division 2 December 11, 1969, at Detroit. (Docket No. 6,333.) Decided September 28, 1970.

Ronald E. Clark, M.D., was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, and *Bruce T. Leitman,* Special Assistant Prosecuting Attorney, for the people.

*James E. Wells,* for defendant on appeal.

Before: Lesinski, C. J., and Levin and Danhof, JJ.

Lesinski, C. J.  After a jury trial, defendant
Ronald Clark, M.D., was convicted of the man-
slaughter[1] of his patient, Grace Neil.  Dr. Clark
appeals alleging four instances of error.

Grace Neil died at defendant's medical clinic on
November 3, 1967.  An autopsy performed the day
following her death failed to reveal the cause of
death.  However, blood and tissue analysis did re-
veal high concentrations of sodium pentothal in the
deceased's blood and brain.  At trial experts gen-
erally agreed that the discovered percentages of
the sodium pentothal would indicate that death had
resulted from too rapid and too excessive infusion
of the drug.  Other witnesses' testimony indicated
that Dr. Clark had left the patient unsupervised
during the infusion of the drug.  In addition, it was
undisputed that the doctor's office did not contain
any resuscitative equipment.  Finally, experts in the
medical profession, including general practitioners,
toxicologists, anesthesiologists, and psychiatrists
testified that the defendant's procedure, on the day
Grace Neil died, clearly violated accepted medical
standards.

Defendant's first allegation of error is that the
plaintiff purposely withheld certain information,
*i.e.,* the defendant's medical record of treatment of
Grace Neil, which would have rebutted the plain-
tiff's evidence of improper treatment.  The testi-
mony of the investigating detective indicates that
at the time of arrest, he requested the defendant to
surrender the medical record of treatment of Grace
Neil and that the defendant complied with this re-
quest.  At trial the records were referred to in the
testimony of witnesses.  However, no objection was
raised by the defense to such references nor to the

---

[1] MCLA § 750.321 (Stat Ann 1954 Rev § 28.553).

fact that the medical records were not produced for the defendant nor admitted in evidence. In this connection we note that defendant admits in *his* brief that the fact of the medical record seizure was testified to at *preliminary examination, six months prior to trial.*

Defendant now asserts, as he did on motion for new trial, that a request for production of the records was made prior to trial on March 15, 1968. While it does appear from documents filed with our Court that the request for production of these records was made, it would not follow from the fact that the request was not complied with, that the people deliberately withheld or suppressed evidence favorable to the defendant; no evidence showing deliberate withholding or suppression of evidence was offered in support of the motion for new trial.

Since the matter of the production of the medical records was never presented to the trial court for full appraisal, this Court cannot now determine whether there was any basis in fact for the claim that the medical records of treatment were suppressed. Where a defendant relies upon evidence *dehors* the record to set aside his conviction, the claim and the evidence in support of the claim ordinarily must be presented at the trial level in order to preserve the issue for appeal. *People* v. *Ivy* (1968), 11 Mich App 427, 431.

Defendant's second claim of error concerns the sufficiency of the criminal information, filed in this case, which charged that:

"A licensed physician, did treat one Grace Neil as his patient, and in the said treatment Ronald E. Clark did then and there owe the legal duty of due professional care and caution to Grace Neil, and while so treating the said Grace Neil, Ronald E. Clark did feloniously kill Grace Neil, by his gross

and culpable negligence, in that he, the said Ronald E. Clark, did inject into the body of Grace Neil an excessive quantity of Sodium Pentothal, and by so injecting the Sodium Pentothal into the body of Grace Neil, Ronald E. Clark did directly cause the death of Grace Neil, and thus improperly performed and grossly neglected the legal duty that he, as a physician, owed to Grace Neil, and committed Manslaughter, contrary to Section 750.321 of the Compiled Laws of 1948: M.S.A. Section 28.553."

The crime of involuntary manslaughter is "the killing of another without malice and unintentionally, but in the doing of some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, *or in negligently doing some act, lawful in itself, or by the negligent omission to perform a legal duty,*" *People* v. *Ryczek* (1923), 224 Mich 106, 110. (Emphasis supplied.) The information fully and fairly informed the defendant of the charge against him. The information specifically charges the defendant with gross and culpable negligence and then specifically pleads the act which constituted gross negligence. MCLA § 750.321 (Stat Ann 1954 Rev § 28.553).

Defendant next argues that the information failed to advise him of the nature of the evidence to be used against him, *i.e.,* the fact of the lack of available emergency oxygen equipment. Although defendant now claims that he objected at trial to the admission of this evidence, felt to be without the scope of the information, our review of the record fails to disclose any such objection. We will not review matters not properly preserved for appeal. *People* v. *Ivy, supra.*

Defendant's fourth allegation of error questions the sufficiency of the evidence to prove knowledge of the extreme risk involved in his conduct. As-

suming *arguendo* that proof of knowledge of the extreme risk involved in the infusion of sodium pentothal is necessary for conviction, we find that the plaintiff clearly carried the burden. Expert testimony clearly established that the failure to constantly supervise a patient being infused with sodium pentothal was violative of accepted medical standards. Further, testimony established that every medical student and medical doctor was aware or should have been aware of the precautions required to be taken. The testimony also established that the package containing the sodium pentothal also contained manufacturer's instructions detailing the necessary precautions. Finally, the *Physicians Desk Reference* contained in Dr. Clark's library, details the procedures for use of the drug. According to the totality of the testimony, Dr. Clark did not follow the required procedures when he administered the lethal dose of sodium pentothal to Mrs. Neil. Instead, he failed to maintain adequate resuscitative equipment, discarded the manufacturer's instructions, administered the drug without assistance, and left Mrs. Neil alone in the examination room during infusion. We find no error in the proceedings below. There was sufficient evidence, if believed, for the jury to find defendant guilty beyond a reasonable doubt. *People* v. *Williams* (1962), 368 Mich 494.

Affirmed.

All concurred.