LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction of robbery and a sentence to imprisonment for twenty-five years.
The alleged victim was Effie McGee, who testified that about 11:30 A.M. February 5, 1979, while she was in charge of McGee’s Grocery Store, of which she was an owner, two men came into the store and the following occurred:
“Well, it was two men that came in, and one stood at the door and the other one came around to the counter and said, ‘You know what this is, open up the register,’ and he had a gun in his hand.
“Q. Do you see that person today, Ms. McGee?
“A. No, I don’t. He had something over his — a mask or stocking over his face and I couldn’t see it.
“Q. Alright [sic]. Now, you say you can’t tell whether or not this is the man that came in McGee’s Grocery Store that morning or not?
“A. No, I can’t testify that this is the man.
“Q. You can’t testify that this is the man?
“A. No, I can’t.
“Q. What did the man do that had the gun that came into the store?
“A. He just came around the counter and he had that gun on me, and he took the money from the register.
“Q. Did you open the register?
“A. Yes, I did.

*306

“Q. Now, after you opened the register what happened?
“A. Well, he made me move over and he took the money.
“Q. What was the other man doing that you said that came inside?
“A. He was standing at the door looking around. He was at the door ready to go. “Q. Yes ma’am. After this man with this gun took the money from the register what happened then, if anything? “A. He just went out and they ran. “Q. Did you see where they ran after they left your store?
“A. Well, toward Tuscaloosa. From the store it was down to the right, you know, and they went out of the store.
“Q. Would that be headed down Highway 216?
“A. Yes, sir.”
According to the witness, she promptly “called the law” but never was able to identify either of the men. It appears that no question has been raised, either on the trial or on appeal, as to the fact that a robbery occurred, as Ms. McGee testified, and that the two men unidentified by her were acting in concert in the commission of the robbery.
Other than Ms. McGee, the only eyewitness to the robbery who testified in the case was Fred Foster, who, as a witness for the State, said positively and unequivocally that he and the defendant were the two robbers. According to Foster, about 8:00 on the morning of the robbery the defendant drove his automobile to the home of the witness in Lincoln Park in Tuscaloosa and told the witness of his plan to rob the store; they found “a ski mask” and improvised a disguise out of a stocking and a wig, made arrangements to leave Lincoln Park in the automobile of defendant, bought gasoline for the automobile and in the course of time arrived at McGee’s Grocery Store at Peterson. They parked the automobile, put on their disguises as previously indicated, and committed the robbery. The witness said he personally held the gun and “told the lady to give me the money, and she opened the cash register and said, ‘There it is, get it,’ ” that he reached into the register and obtained the money, and then he and defendant left the store. They went to the automobile in which defendant had left the keys, and they immediately drove away in the automobile. The witness was driving as they left. While the witness was driving the automobile and before they had gone a great distance, the defendant threw from the automobile the ski mask that the witness had used and the stocking and cap that defendant had used as disguises. The witness said that thereafter, while they were in or near Holt, “We changed seats in the car and I pulled off the pants and changed pants and stuff that I had on, and he drove the rest of the way.” According to further testimony of Foster, he and defendant divided the money that had been taken from the cash register.
The only issue expressly presented by appellant is thus stated in his brief:
“The State failed to meet its burden of proof and did not establish the guilt of the defendant beyond a reasonable doubt; the verdict of the jury was therefore contrary to the law and the evidence and the trial court’s verdict should be reversed.”
Appellant correctly argues in his brief that the question of the sufficiency of the evidence to support the verdict and judgment is to be viewed with special reference to the testimony of Foster, an admitted accomplice, that special consideration should be given to the established law that a conviction of a felony cannot legally be obtained “on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and that such corroborated evidence, if it merely shows commission of the offense or the circumstances thereof, is not sufficient.” Code of Alabama 1975, § 12-21-222. We now consider the question whether there was other evidence in the case that corroborates the testimony of Foster as to the guilt of defendant, as mandated by the cited statutory law.
*307 There was testimony that soon after the robbery, law enforcement officers proceeded to investigate and as they were moving by automobile on the Holt-Peterson Road, in the direction of the store, they found articles of clothing that consisted in part of a ski mask and a stocking cap, which were afterwards examined by an expert who testified that the ski mask contained hair that was similar to the hair of Foster and that the stocking contained hair that was similar to the hair of defendant.
A witness for the State testified that about 11:30 A.M. or noon on February 5, 1979, he was traveling on the Holt-Peterson Road and saw an automobile in which “two black males” were riding, and he observed that there was “a lot of fumbling around in the car.” He was shown photographs of an automobile which other testimony showed were photographs of defendant’s automobile, and the witness said:
“Yes, sir, this is the car that I saw, specifically because of the pinstripe. I do some pinstriping myself and this is odd pin-striping to be on the car. That’s what caught my eye.”
Linton Richie, who lived in the same community as Frederick Foster, testified he knew defendant and that on the morning of the robbery, between 9:30 and 10:30, he saw them “pulling out from Frederick Foster’s home” with defendant in the driver’s seat, that he attempted to stop them to talk with them, but defendant answered back and said, ‘I’m in a hurry, man,’ and “sped on off up the road.”
An employee of a service station in Tuscaloosa testified that a man whom he identified as the defendant and Fred Foster, whom he knew, came into the service station about 10:30 or something to eleven,” and bought gasoline for the automobile. On cross-examination, he said:
“Q. Okay. Now, you stated that you saw that old automobile on the 5th of February?
“A. No, I didn’t say on the 5th. I saw it on that day that I put some gas in it that morning.
“Q. Whatever day — what was?
“A. The day before the robbery.
“Q. The day before the robbery?
“A. Uh — uh (yes).”
It is unfortunate that the ambiguity remains as to whether it was on the same day of the robbery, but before the time of the robbery, or whether it was on the day before the day of the robbery, but there seems to be no issue between the parties as to this.
Without consideration of whether there is additional evidence corroborative of the testimony of Foster as to the guilt of defendant, we find that that which we have stated constitutes sufficient compliance with the statutory law on the subject. It has as much strength as, if not more than, the law requires.
“Whether such corroborative evidence exists is a question of law to be determined by the trial court, its probative force and sufficiency being questions for the jury. Berry v. State, 231 Ala. 437, 165 So. 97. The corroborative evidence need not be strong nor sufficient in itself to support the conviction, since the sole criterion is only that it legitimately tends to connect the accused with the offense. Goodman v. State, 52 Ala.App. 265, 291 So.2d 358. “Also, corroboration of an accomplice’s testimony may be shown by circumstantial evidence. Hudson v. State, 49 Ala.App. 282, 270 So.2d 828; Pryor v. State, 47 Ala.App. 706, 260 So.2d 614.” Thompson v. State, Ala.Cr.App., 374 So.2d 377, 384, aff’d 374 So.2d 388 (1979).
We take note of the evidence introduced by the defendant, which consisted exclusively of testimony in the nature of an alibi; it was not directed exclusively to the location of the defendant on the day and the occasion of the robbery but largely to February 3, 1979, a Saturday, which apparently afforded contradiction of some inference from evidence to the effect that defendant was with Foster on a visit of Foster to the McGee store on February 3. Whatever worth there was in the evidence for the defendant was within the province of the jury to decide.
*308 We have searched the record in vain for error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.