Alvin Scott was indicted for theft in the second degree, in violation of § 13A-8-4, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment". Following a habitual offender hearing, the appellant was sentenced to life imprisonment in the penitentiary.
Mrs. Ernest Weekley owns Weekley's Grocery Store in Perdido, Alabama. On Friday, January 15, 1982, the Gulf Oil Corporation delivered gasoline to the two underground gasoline tanks situated beside Mrs. Weekley's store.
Mrs. Weekley received a call early Saturday morning, January 16, 1982, from one of the people who live near her store. As a result of that call, Mrs. Weekley went to her store and discovered that a quantity of gasoline was missing from the regular storage tank.
Mrs. Weekley testified that the gasoline was stolen on January 16, 1982, but the *Page 1366 
sheriff's office wrote it up as occurring on January 19, 1982.
The wholesale value of the gasoline that Mrs. Weekley discovered missing was stated as nineteen and a quarter cents per gallon (.1925 gal.).
Betty Hall testified she lives across the street from Weekley's Grocery Store. On January 19, 1982, Mrs. Hall was awakened by a phone call from one of her neighbors, Janet Bush.
After she received the call, Mrs. Hall looked out of the side door of her house and saw a pickup truck with a pump and tank on the rear thereof and a man walking and smoking in front of Mrs. Weekley's store.
Soon thereafter, she saw Buddy Bryars drive up to the store. Mrs. Hall heard the man say, "Hey, Buddy, what are you doing?" (R. 37). At this point Bryars backed up his vehicle. The man then walked over to Bryars' car, leaned in the window and said something and then Bryars drove away.
Mrs. Hall saw another man and both of them got in the truck and left.
After the two men left, she and some other neighbors went over to Weekley's Grocery Store and waited for Mrs. Weekley and the Sheriff to arrive. She stated that they smelled gasoline and took the top off of the gasoline tank.
Mrs. Hall said she did not see a hose going into the tank and did not see any gasoline removed. She stated she knew the man that she had seen that night was the appellant because of his body build, the way he walked and his missing fingers.
William E. Bush testified he lives next to Weekley's Grocery Store. On January 19, 1982, at approximately 12:30 or 1:00 a.m., Bush was awakened by his wife who told him someone was at Weekley's store. Bush told his wife to call the Sheriff and one of their neighbors, Clifford Hall, and then went outside. He saw two men and a "work type" pickup truck with a gas tank and a pump mounted in the bed. The truck was parked by the gasoline storage tank at Mrs. Weekley's store. One of the men was standing beside the place where the tank is filled and the other man was walking around. Bush did not recognize either of the men.
Once Bush was outside, he realized his gun did not have any shells, so he went back to his house, loaded the gun and went outside again. He saw Buddy Bryars drive up to the store. Bush decided to get into his truck and drive over to Mrs. Weekley's store. When he got there, he asked Bryars what was happening.
After his conversation with Bryars, he went home. Bush saw the two strange men remove a hose from the gasoline tank, put it in the truck and then leave. Bush then went back to Weekley's store and Mrs. Weekley, Bryars and the Sheriff were there.
Bush stated the appellant was one of the men he saw that night at Weekley's store.
Hubert Lee Bryars (Buddy) testified he is an assistant deputy for the Baldwin County Sheriff's Department. On January 19, 1982, he received a call from the jail, and he was supposed to go to Perdido to see if he saw anybody.
He drove to Weekley's Grocery Store and saw the appellant there with his pickup truck. When Bryars got out of his vehicle, the appellant said, "Buddy, if I hadn't recognized you, I would blow your s_____ away." (R. 89). The appellant stated it would take about two seconds to light the dynamite.
Bryars saw the other man but did not recognize him. After talking to Bush when he drove up, Bryars then left and returned when the Sheriff arrived. Bryars stated that he told the Sheriff he did not know the man because the appellant had threatened to kill him and his family if he told on them.
Bryars told the Sheriff that the appellant was one of the men he saw that night, after he was called to the jail to sign a bond because he was withholding state's evidence. *Page 1367 
Larry Shivers testified that the appellant came to his house sometime in mid-January, 1982. The two men drove around and went to Weekley's Grocery Store in Perdido and stole some gasoline. The appellant was the look-out and Shivers did the pumping.
Shivers stated that while they were there, Buddy Bryars drove up. A pickup truck also stopped at the store but he did not know who was in it.
Shivers stated he had been charged in the theft. The two had been to Weekley's Grocery Store on other occasions and had stolen gasoline.
Jimmy Varnum testified that Buddy Bryars told him that hethought that one of the men involved in the theft was Shivers, but he did not know the other man.
Millard Richard McCall testified that one night at the Dixie Fort Motel in Atmore, he heard the appellant tell Bryars he had loaned his truck out. Bryars told the appellant the police were looking for his truck and the appellant said he would find it.
Jerry Spann testified Bryars told the appellant that his truck had been seen in Perdido and the police were looking for him.
James Hadley stated that Bryars asked him if he had heard about the gasoline theft. When Hadley stated that he had, Bryars told him that he could identify Shivers that night but not the other one.
The appellant denied he was at Weekley's Grocery Store on January 19, 1982. He stated he had loaned his truck to Shivers on that date. The appellant found out about the theft when Bryars came to his room at the Dixie Fort Motel and told him the police were looking for him. The appellant also denied threatening Bryars.
 I (a)
The appellant contends the evidence in this case was insufficient to sustain a conviction of theft in the second degree.
In order to support a conviction in the case at bar, the prosecution had the burden of establishing by a preponderance of the evidence: (1) the ownership of the property; (2) that the said property was taken from the building; (3) the value of the property; (4) that the appellant did the taking or aided and abetted in the alleged taking; and (5) the time and venue of the commission of the act. See Stuckey v. State, 28 Ala. App. 83,180 So. 116 (1938); see also McMickens v. State,16 Ala. App. 78, 75 So. 626 (1917).
There is no question here concerning the ownership of the property taken. The evidence was undisputed that the gasoline found missing from the underground storage tank was the property of Mrs. Weekley.
Section 13A-8-4 (e), Code of Alabama 1975 states: "The theft of property which exceeds $25.00 in value, and which is takenfrom or in a building where said property is sold or stored, constitutes theft of property in the second degree."
Obviously, in the case at bar, the gasoline or "property" was stored in the underground gasoline storage tank. The issue we confront is what type of structure constitutes a "building" under the above statute. The appellant points out that "building" is defined by § 13A-7-1 (2), Code of Alabama 1975 as: "Any structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods . . ." (The same definition is found in § 13A-3-20 and § 13A-7-40, Code of Alabama 1975).
There are several reasons why we believe the legislature did not intend the above definition of "building" to apply in relation to theft offenses.
First, the legislature did not include the above-referenced definition in the definition section preceding the theft offenses. Therefore, we must assume the legislature intended the definition to apply only to chapters in which the definition was included, but not to every chapter in which the word was used.
Second, the word "building" as applied to the burglary (Ala. Code, § 13A-7-1 (2) (1975)), arson (Ala. Code, § 13A-7-40 *Page 1368 
(1975)), and justification and excuse (Ala. Code, § 13A-3-20
(1975)) statutes has a different meaning than the use of the word in the theft statute. Traditionally, burglary is an offense against the security of habitation and arson is an offense against the building itself. See Chaney v. State,225 Ala. 5, 142 So. 104 (1932); Washington v. State, 290 Ala. 344,276 So.2d 587 (1973). In the justification and excuse section of the Code, the word "building" is used in connection with one's right to use force in defense of his person and home against unlawful violence. See Russell v. State, 219 Ala. 567,122 So. 683 (1929). Larceny, however, is an offense against the property. See Chaney v. State, supra. The significance of the word "building" is not as great in the theft statutes because the offense is not against the building itself or the security of the building but is against the property taken therefrom. The offense of larceny from a building developed as an aggravated form of simple larceny because such places had to be invaded to consummate the larceny. McCabe v. State,1 Ga. App. 719, 58 S.E. 277 (1907).
Furthermore, even if the definition of "building" found in §13A-7-1 (2), § 13A-7-40 and § 13A-3-20, Code of Alabama 1975 applies to the use of the word in the theft statute, we believe that an "underground storage tank" would fall within that definition. Certainly, a gasoline storage tank is a structure which is utilized for the storage of goods.[1] Even though a person cannot physically enter the tank, entry may be effected by the use of some type of instrument by the person (e.g., the hose). See Perry v. State, 407 So.2d 183 (Ala.Cr.App. 1981).
The appellant cites Chaney v. State, supra, as authority for the proposition that an underground gasoline storage tank is not a "building". In that case, the Alabama Supreme Court stated that a building "must consist of four walls and a roof, and if not resting on the earth's surface as a floor, must have a floor of other material and must be susceptible of being entered by a human being. A gasoline pump is not such a structure." Chaney v. State, supra.
This case may be distinguished from the one at bar on several grounds. First, the Chaney case dealt with a gasoline pump not a gasoline storage tank. A gasoline pump is merely a device by which and through which gasoline is drawn from the storage tank. See People v. Lamphere, 219 N.Y.S. 390, 219 App. Div. 422
(1927). It is not used for storage of the gasoline.
Second, simply because a gasoline storage tank may be cylindrical rather than square or rectangular does not mean it may not be classified as a building. See State v. Ornelas,42 N.M. 17, 74 P.2d 723 (1937). A gasoline storage tank is certainly "a structure . . . enclosing a space within its walls . . ." Jenney v. Hynes, 285 Mass. 332, 189 N.E. 102 (1934). Furthermore, underground structures have been held to be buildings. See cases cited in Jenney v. Hynes, supra.
Several jurisdictions have dealt with the question as to whether a gasoline tank is a "building" and different conclusions have been reached. See Atkinson v. Piper, 195 N.W. 544, 181 Wis. 519 (1923) (a gasoline tank held not to be a building within law restricting height of buildings); Small v.Parkway Auto Supplies, 258 Mass. 30, 154 N.E. 521 (1926) (case dealt with deed restrictions and court held the word "building" in its ordinary sense does not include a gasoline tank). SanDiego County v. McClurken, 37 Cal.2d 683, 234 P.2d 972 (1951) (gasoline tanks held to be "buildings" within definition provided in zoning ordinance); Jenney v. Hynes, supra, (gasoline tank held to be "building" within restriction against, and decree enjoining, erection of "buildings" other than dwelling house). *Page 1369 
In the case of State v. Gibson, 97 Iowa 416, 66 N.W. 742
(1896), the Iowa Supreme Court dealt with the issue of what constitutes a "building" when the charge is larceny from a building. The defendant in that case was charged with larceny from a corncrib. The facts showed the corncrib was enclosed on all sides and did not have any doors or windows. The defendant gained entry into the corncrib by chopping off the end of a bottom board with an ax. He then reached into the crib and started the corn running out into his wagon by pulling some out with his hands.
The court stated that:
 "A `building' has been defined to be `a fabric or edifice constructed for use or convenience; as a house, a church, a shop. It must be permanent, and designed for the habitation of men or animals, or the shelter of property.`2 Am. Eng.Enc.Law, 601. It was said in Railroad Co. v. Vanderpool, 11 Wis. [119] 121, that `the word `building,' as a noun, has a common, well-understood meaning, . . . and including only those which have a capacity to contain and designed for the habitation of man or animals, or the sheltering of property."
State v. Gibson, supra.
The court further stated that the corncrib was constructed as a permanent structure and was specifically designed to store corn, which is a commodity of value for use and sale. Whether the corncrib was a building within the statute could not be determined as a matter of law and was a question for the jury.
Certainly here a gasoline storage tank, although not having any doors or windows, is an edifice of permanent construction designed specially for the storage of gasoline. Whether it was a "building" under the laws of the State of Alabama was a question for the jury in the case at bar to decide.
The Supreme Court of Michigan in People v. Williams,368 Mich. 494, 118 N.W.2d 391 (1962), held that a covered metal shed, which was used to store tires, set apart and away from the main gasoline station was a building within statute prohibiting larceny from a "building".
"All stationary structures . . ., no matter of what substance they may be constructed, are within term `building' . . . so long as they are designed for use in position in which they are fixed." People v. Williams, supra.
Though set apart from the main building occupied by Weekley's Grocery Store, the gasoline storage tank was a necessary part of the operation of a filling station. A gasoline tank is certainly an enclosed structure used for the storage of goods. Whether it was a "building" was a jury question under the evidence presented and which the jury determined adversely to the appellant.
 I (b)
The only evidence of the value of the gasoline missing was the testimony of Mrs. Weekley. She stated that she found "approximately 150 gallons" of gasoline missing and that the price of gasoline at that time was nineteen and one-quarter cents (.1925) a gallon (which calculates to be $28.88).
Since in Alabama, the value of the property is used to determine the degree of theft, the State must establish the value of the property was equal to or exceeded the diacritical amount. We hold that the State met this burden in the case at bar. This court noted:
 "Testimony as to market value is in the nature of opinion evidence. A witness need not be an expert or dealer in a particular article in order to testify as to its value, if he has had the opportunity to form a correct opinion. Thomas v. State, Ala.Cr.App. 338 So.2d 1045 (1976). Such opinion evidence is not conclusive, and it therefore remains with the jury as the trier of fact to be considered like all other evidence. The evidence is viewed in light of the knowledge and experience of the jury, which factors are to be relied upon by the jury in determining the true value of the property. State v. Crawford, 277 Ala. 568, 173 So.2d 109 (1965)." *Page 1370 
Lankford v. State, 396 So.2d 1099 (Ala.Cr.App. 1981).
Mrs. Weekley testified she measured the gasoline in the tank to determine the amount of gasoline missing. She was clearly familiar with the wholesale price of the gasoline as she paid the bills. Therefore, she was competent to testify as to the value of the gasoline and the jury's determination as to the value was amply supported by the evidence presented.
 I (c)
The venue of the theft was clearly established as Weekley's Grocery Store in Perdido, Alabama.
There was conflicting evidence adduced at trial concerning the date of the offense. One witness testified it occurred on January 16, 1982, and three others testified it was January 19, 1982.
Even though no definite date was positively established, all of the testimony relating to the theft pertained to one transaction on one specific night at Weekley's Grocery Store. The appellant in this case had full knowledge of the exact offense for which he was being tried and the approximate date thereof.
Furthermore, the judge instructed the jury to determine if the time difference was in conflict and if so, whether it was a material difference which would render this appellant's trial unfair.
We hold the jury properly considered the conflicts concerning "time" and determined all of the witnesses were referring to the same night on which the theft occurred.
Therefore, we hold there was, in fact, sufficient evidence on which to sustain the appellant's conviction. Three witnesses so testified.
 II
The appellant contends that a conviction may not be sustained on the uncorroborated testimony of an accomplice.
While we agree with the appellant, we must note that the corroborating evidence need not be sufficient in itself to support the conviction. The only requirement is that the corroborating evidence legitimately tend to connect the accused with the offense. Barnes v. State, 401 So.2d 305 (Ala.Cr.App. 1981).
Three witnesses testified they saw the appellant at Mrs. Weekley's store on the night in question. Two of them noticed a tank and a pump on the back of the appellant's truck and one of the witnesses noticed a hose running from the appellant's truck to the area of the gasoline storage tank. One of the witnesses testified she smelled gasoline at the store after the appellant and his companion had left. Furthermore, another witness testified the appellant threatened him not to reveal his knowledge of the appellant's involvement in the theft.
The fact that the appellant was seen at Mrs. Weekley's store near the time of the theft coupled with the fact that there was a hose running from his truck to the storage tank was sufficient "to connect the appellant to this theft" and therefore furnish the necessary corroboration of his accomplice's testimony.
 III
The appellant contends the trial court erred by allowing a State's witness to view and use a drawing of the scene of the theft which had been made by a previous State's witness. He asserts this is a violation of "the Rule" and the Hearsay Rule.
During cross-examination of one of the State's witnesses, i.e., Mrs. Hall, defense counsel requested her to draw the area around Mrs. Weekley's store for the jury, which she did. The appellant then objected when the State attempted to allow another State's witness to use the map during his testimony.
The Alabama Supreme Court has held that it is proper to allow witnesses to refer to a map, even though it was not made by them, in explanation of their testimony before the jury. Burtonv. State, 115 Ala. 1, 22 So. 585 (1897). Furthermore, it is not necessary that the map be introduced *Page 1371 
into evidence. Alabama Power Co. v. Jones, 212 Ala. 206,101 So. 898 (1924).
The trial court did not err by allowing a State's witness to use a map drawn by another State's witness here at the request of defense counsel. Such a map was simply used as an aid in support of the witnesses' own testimony.
 IV
The appellant argues that two of his prior convictions should not have been admitted at the habitual offender hearing because the State failed to show the appellant had made a knowing waiver of his Boykin rights. Both of the challenged convictions were the result of guilty pleas.
Recently this court, through Judge Sam Taylor, stated:
 "Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), states that before a trial judge may sentence a defendant following a plea of guilty, he must inquire if the defendant's plea has been given knowingly and voluntarily. However, this rule of law has no application to the instant case. It only applies during the sentencing of the defendant following his guilty plea. There is no authority that these matters must be reviewed when that conviction is used pursuant to the Habitual Offender Act.
 "A plea of guilty is a conviction itself. This is not the proper forum for attacking a prior conviction used during a Habitual Offender hearing. The proper forum for attacking the validity of a prior conviction would be by a petition for a writ of error coram nobis. See Mayola v. State, 337 So.2d 105
(Ala.Crim.App. 1976)."
Jones v. State, 431 So.2d 1367 (Ala.Cr.App. 1983).
Furthermore, we find that the State gave proper notice and offered adequate proof of the appellant's prior convictions. Certified copies of the minute entries of the appellant's prior convictions were offered as proof of these convictions. This is a proper method of proving such prior convictions. Thomas v.State, 395 So.2d 1105 (Ala.Cr.App. 1981).
Each exhibit showed on its face a prior felony conviction of this appellant, and that he was represented by counsel at such time. The appellant's prior convictions were properly presented during the habitual offender hearing.
Therefore, for the reasons stated above, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.
[1] Black's Law Dictionary, Fifth Edition, defines building as:
"BUILDING. Structure designed for habitation, shelter storage, trade, manufacture, religion, business, education, and the like. A structure or edifice inclosing a space within its walls, and usually, but not necessarily, covered with a roof.Netter v. Scholtz, 282 Ky. 493, 138 S.W.2d 951, 953."