A jury found defendant (appellant) guilty of burglary in the third degree. Code of Alabama 1975, § 13A-7-7 provides:
 "(a) A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.
 "(b) Burglary in the third degree is a Class C felony."
§ 13A-5-6 (a)(3) prescribes the punishment for a Class C felony at "not more than 10 years or less than 1 year and 1 day." The court fixed defendant's punishment at imprisonment for 10 years and sentenced him accordingly.
The indictment substantially followed the statute, but in doing so it alleged that defendant's conduct was "with the intent to commit a crime therein, to-wit: theft of property."
There was no proceeding under the Habitual Felony Offenders Act. Immediately upon the return of the verdict, the court proceeded with allocution and thereafter stated:
 "Mr. Perry, in view of your prior record of three prior convictions of the offense of burglary, and the Jury having found you guilty of Burglary in this case, it's the order and judgment of this Court that you be sentenced to serve a term of ten years in the penitentiary."
The transcript shows that promptly after the jury was released, the following occurred:
 "THE COURT: Let the record reflect that at the close of the State's case, the Defendant and Defendant's counsel made a motion to exclude the State's evidence on the grounds that the State failed to prove a prima facie case in that they had failed to prove that there was an entry into the building involved, and also —
 "MR. DUFFEY: The specific intent of committing a theft. *Page 184 
 "THE COURT: Failed to prove the specific intent that he entered the building with the intent to commit theft of property therein.
 "The Court duly overruled that motion and the Court received the verdict in this case."
In urging that the judgment of the trial court should be reversed, appellant takes the same position that he did as to his motion to exclude the evidence and asserts the same grounds, which he encapsulates in this sentence in his brief, "Specifically the evidence failed to show that the appellant or anyone else entered Nixon's Grocery Store or that the appellant intended to commit a theft."
Much of the brief evidence, which consisted of the testimony of three witnesses called by the State, no witnesses on behalf of the defendant, is not pertinent to the issue or issues on appeal and is not included in our summary of the facts.
Mr. Henry Moore, an employee of the ABC Board Central Office, as a supply clerk, testified that, about 11:00 P.M. December 6, 1980, he was in the vicinity of Nixon's Grocery Store, which according to the undisputed evidence was closed and locked at the time, and observed an individual at the corner of the building where the store is located and another person, whom he identified as the defendant, at the front door of Nixon's Grocery Store. He further testified:
 "Q. Could you tell the Court what, if anything, you observed him doing at that door?
"A. He was prying at the locks.
"Q. How was he doing it, sir?
 "A. He had something . . . I don't know whether it was a screwdriver — it looked like a flat instrument — and he was jiggling the locks with it.
 "And, at that time, I was getting out of my car, and I just kept across the street to the other place across the street."
According to the witness, he called law enforcement authorities as soon as he could get to a telephone and reported what he had seen and there was a prompt response to the call. On cross-examination, the witness testified:
 "Q. Did this person you saw fooling with the door, did they have their back to you, or did you see his face, or what?
 "A. When I was going up there and he was jiggling with the door, just like I said, the individual on the other end was saying something to this person and he was looking up, but he still had hold of the lock.
"Q. Do you know what the person was saying?
 "A. No, I didn't. My window was rolled up, but I could tell he was talking to somebody down at the end of the building.
 "Q. But you saw that person's back jiggling with the door?
 "A. No, his back wasn't turned. His back was kind of facing me when I drove up.
"Q. His back was facing you?
 "A. No, I didn't say his back. He was facing me when I drove up.
"Q. He was facing you?
 "A. Yes. Jiggling with the lock like he was talking to the individual. Like I turn this way here, but I still have something in front of me. But he was talking to somebody at the other end of the building.
 "Q. How far away would you say . . . you parked on the —
"A. The north end of the building."
Officer M.A. Fontain of the Montgomery Police Department, who was with the second police unit that answered the call to Nixon's Grocery Store, testified that, when he arrived at the scene, the personnel of the first unit to arrive were chasing a person, not the defendant, who had fled the scene, that he located and arrested the defendant at a lounge across the street from the store. The witness testified further:
"Q. And did you physically go to Nixon's Grocery?
"A. Yes, sir, I did.
 "Q. What, if anything, did you observe about the doors or the entrance to that place? *Page 185 
 "A. When I arrived at the scene, the door was closed, and it appeared that the hasps on the lock had been pried off. And when the door was opened, inside the door were particles of wood and the hasp that came off a lock.
 "Q. And this was on the inside of the building when you got there?
"A. Yes, sir."
Mrs. Nixon, the proprietor of the store, testified that she knew the defendant, that he and his family had been customers of the store. She testified that she was home in bed the night of the incident involved, that the police officers called her from the store and she went to the store and observed what had happened. She testified, "There wasn't anything moved about or wasn't anything that I could tell was taken," and that there "wasn't anything missing at all that I could find or anything." She further testified that, soon after the defendant was released on bond, he called her by telephone and the following conversation between them occurred:
 "A. Well, he said he was Howard and said, I'm out. And, I said, yes. And, I said, out of jail? And he said, yes, I'm out on a four hundred dollar bond.
"Q. And did he say anything? —
 "A. And then he said to me, he said, Ms. Nixon, I didn't do it, I didn't break into your place.
"Q. And did he say anything else?
 "A. And he said, But I'm willing, if there is anything missing, I am willing to pay for it."
We are in agreement with the principles of law asserted by appellant. Prior to the effective date of the Alabama Criminal Code (Code of Alabama 1975, Title 13A) both a breaking and entry were essential elements of the crime of burglary, but a breaking has been eliminated as an essential element by §§13A-7-5, 13A-7-6 and 13A-7-7. To constitute an entry, there must be a penetration of the space within the building by some part of the body of the defendant, or an accomplice of the defendant, or by an instrument inserted for the purpose of perpetrating a felony in the building. In Walker v. State,63 Ala. 49, 51-52 (1879), it was held:
 "When one instrument is employed to break, and is without capacity to aid otherwise than by opening a way of entry, and another instrument must be used, or the instrument used in the breaking must be used in some other way or manner to consummate the criminal intent, the intrusion of the instrument is not, of itself, an entry.
 "When entry is made by means of an instrument, it must be used for the purpose of effecting the felony, and not merely of gaining entrance for the defendant. Accordingly, the act of prying open a door with an iron bar does not constitute an entry, as it is not used for the purpose of committing a felony therein, but merely of breaking."
To the same effect is Robinson v. State, 45 Ala. App. 74, 78,224 So.2d 675 (1969), where it is stated:
 "The evidence that the door `was pried open and the lock was busted with some type of instrument' did not show an entry into the building."
We do not find that the locking apparatus in Robinson v.State, supra, was like such apparatus in the instant case. It appears that there it did not contain a hasp and padlock. Here, there was a hasp, which of itself implies that the lock was a padlock, even though the word "padlock" is not found in the evidence.
We are not in agreement with appellant's contention that there was no substantial evidence that defendant, or an accomplice of defendant, effected an entry into the building by some part of his body. The circumstantial evidence to the effect that, soon after the defendant had pried loose and broken the padlock and hasp device that locked the door on the outside thereof, the defendant left the door closed and went across the street, that no one else opened the door between that time and the arrival of the officers and that, upon opening the door by an officer part of the hasp and lock device and some particles of wood were observed on the floor inside of the building, *Page 186 
constitutes substantial evidence, in our opinion, that the door was opened between the time the defendant was obviously attempting to effect an entry and his departure from the door. Under the undisputed evidence, such opening of the door could hardly have been accomplished by anyone other than the defendant. Furthermore, there was no occasion for opening the door with the instrument used in prying off the hasp and lock. The door was then no longer locked. To have opened the door to such an extent that some of the hasp and lock apparatus and some of the wood to which it was fastened moved from outside the door to the floor on the inside of the building without a penetration by some part of the body of the defendant of the space inside the door would seem less reasonable than the contrary. In our opinion, a jury question as to such an entry was presented.
We disagree also with appellant's contention that any entry by defendant was not made with an intent to steal. There is no suggestion that defendant had some other specific intention, which would be readily conceivable if the building had not been some kind of a building, such as a store, which ordinarily a trespasser would enter solely for the purpose of taking something of value therefrom. Although a breaking is not an essential element of the crime charged, the breaking and entry at the time and under circumstances shown by the evidence lead to a reasonable conclusion that the person breaking and entering the store intended to steal something therefrom.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.