[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1152 
James Cooper was convicted, pursuant to count one of the indictment returned against him, to intentional murder as a lesser offense of murder made capital because it was committed during the course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975. He was also convicted, pursuant of count two of the indictment returned against him, of the capital offense of murder committed during the course of a burglary, Ala. Code 1975, § 13A-5-40(a)(4). These convictions were based on the killing of Herman Daniel. The jury recommended that Cooper be sentenced to life imprisonment without the possibility of parole for the capital-murder conviction. The trial court accepted the jury's recommendation and sentenced Cooper to life imprisonment without the possibility of parole for the capital-murder conviction. Cooper was sentenced to life imprisonment for the conviction for intentional murder.
 I.
Cooper contends that he has been subjected to double jeopardy because the jury returned verdicts, and the court entered judgments of conviction, on both capital murder and the intentional murder based on the one killing of Herman Daniels. The record reflects that Cooper is correct, and the State concedes as much; thus, Cooper's intentional-murder conviction based on count I of the indictment is due to be vacated.
 "Section 13A-1-8(b), Ala. Code 1975, provides, in pertinent part, as follows:
 "`(b) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each *Page 1153 
such offense. He may not, however, be convicted of more than one offense if:
 "`(1) One offense is included in the other, as defined in Section 13A-1-9.'
 "Intentional murder, as defined in § 13A-6-2(a)(1), Ala. Code 1975, is a statutory element of the capital offense of murder committed during first-degree robbery, as that offense is defined in § 13A-5-40(a)(2), Ala. Code 1975; therefore, the State must prove the element of intentional murder to support a conviction for the capital offense of murder committed during a first-degree robbery. See, e.g., Mangione v. State, 740 So.2d 444, 449
(Ala.Crim.App. 1998)."
Watson v. State, 875 So.2d 330, 333 (Ala.Crim.App. 2003).
Thus, in Cooper's case, as in Watson, intentional murder is a lesser offense to the offense of capital murder. Because the intentional murder of Herman Daniels as charged in count I of the indictment was an element of the capital offense of the murder of Daniels during the course of a burglary, as charged in count II of that same indictment, Cooper could not be convicted of both counts.
 "As we noted in Borden v. State, 711 So.2d 498, 503
(Ala.Crim.App. 1997), aff'd, 711 So.2d 506 (Ala. 1998):
 "`We recognize that the trial court may, and indeed should, properly submit to the jury all counts of an indictment and lesser included offenses reasonably supported by the evidence, notwithstanding the fact that some of the lesser included offenses constitute the "same offense" for double jeopardy purposes. Rolling [v. State], 673 So.2d [812] at 815 n. 1 [(Ala.Crim.App. 1995)], citing Ball v. United States, 470 U.S. 856, 865, 105 S.Ct. 1668, 1673-74, 84 L.Ed.2d 740 (1985), and King v. State, 574 So.2d 921, 935-36 (Ala.Cr.App. 1990) (Bowen, J., concurring specially). See § 13A-1-8(b). However, where, as here, the jury returns guilty verdicts for both a capital offense alleged in one count of the indictment and the lesser included offense of intentional murder . . . [as] alleged in another count of the indictment, and the same murder was an element of the capital offense and the intentional murder conviction, the trial court should enter a judgment on only one of the offenses. See Coral [v. State], 628 So.2d [954] at 958 [(Ala.Crim.App. 1992)].'
 "(Footnote omitted.) See also Simmons v. State, 797 So.2d 1134, 1184 (Ala.Crim.App. 1999); Ingram v. State, 779 So.2d 1225, 1241 (Ala.Crim.App. 1999), aff'd, 779 So.2d 1283 (Ala. 2000)."
Watson v. State, 875 So.2d at 333.
Accordingly, we remand this cause for the circuit court to vacate Cooper's conviction based on count I of the indictment charging intentional murder. We note, however, that Cooper's conviction under count II of the indictment for capital murder was proper, "`"and thus it stands."'" Watson, 875 So.2d at 333
(quoting Borden v. State, 711 So.2d 498, 504 (Ala.Crim.App. 1997), aff'd, 711 So.2d 506 (Ala. 1998), quoting in turn Coralv. State, 628 So.2d 954, 958 (Ala.Crim.App. 1992)).
 II.
Cooper contends that the trial court erred in denying his motion for a judgment of acquittal made at the conclusion of the State's case. At that time Cooper argued that the State had failed to establish a prima facie case of capital murder during a burglary because, according to Cooper, there was no evidence that he participated in a robbery or in a killing. On appeal Cooper challenges the sufficiency *Page 1154 
of the evidence, taking issue with what he alleges is the State's failure to prove a breaking and entering and to prove that the killing of Daniels occurred as Cooper was leaving or fleeing the scene of a burglary.[1]
Capital murder for a murder committed during a burglary is defined in § 13A-5-40(a)(4), Ala. Code 1975, as "Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant."
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument."
Section 13A-7-5, Ala. Code 1975.
 "(a) A person commits the crime of burglary in the second degree if he knowingly enters or remains unlawfully in a building with intent to commit theft or a felony therein and, if in effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument.
 "(b) In the alternative to subsection (a) of this section, a person commits the crime of burglary in the second degree if he unlawfully enters a lawfully occupied dwelling-house with intent to commit a theft or a felony therein."
Section 13A-7-6, Ala. Code 1975.
The intended crime underlying the burglary in this case was "assault and/or theft." (CR. 22.) The relevant portions of the statute define "assault" as: "With intent to cause physical injury to another person, he causes physical injury to any person." Section 13A-6-22(a)(1), Ala. Code 1975. The relevant portions of the statute define "theft" as: "[P]roperty of any value taken from the person of another, constitutes theft of property in the first degree." Section 13A-8-3(a), Ala. Code 1975. "The theft of a firearm, rifle, or shotgun, regardless of its value, constitutes theft of property in the second degree." Section 13A-8-4(d), Ala. Code 1975. "The theft of any substance controlled by Chapter 2 of Title 20 or any amendments thereto, regardless of value, constitutes theft of property in the second degree." Section 13A-8-4(e), Ala. Code 1975. "The theft of property which does not exceed five hundred dollars ($500) in value and which is not taken from the person of another constitutes theft of property in the third degree." Section13A-8-5(a), Ala. Code 1975.
 "`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' *Page 1155 Ballenger v. State, 720 So.2d 1033, 1034
(Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). `The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978)."
Pace v. State, 904 So.2d 331, 345-46 (Ala.Crim.App. 2003) (opinion on return to remand).
Cooper's theory of defense was that Parthina Coleman, an admitted drug user and dealer with whom Daniels lived, had unwittingly unlocked the security door to the apartment building, allowing Cooper and three codefendants into the building; thus, he argued, there was no "breaking and entering." Additionally, according to Cooper, Daniels was killed in a street fight, not as a consequence of a burglary.
At the onset we note that contrary to Cooper's assertion, the State did not have to prove a "breaking and entering."
 "The common law defined the crime of burglary far more narrowly than its statutory successor does. Common-law burglary required a breaking and entering of the dwelling of another in the nighttime with the intent to commit a felony. Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law § 8.13 (1986). When Alabama adopted its current burglary statute, as part of the Alabama Criminal Code, by Act No. 607, Reg. Session, Ala. Acts 1977, the legislature expanded the crime of burglary beyond its common-law boundaries, by eliminating most of the common-law requirements. The requirement of a `breaking' was one requirement deleted. Perry v. State, 407 So.2d 183 (Ala.Crim.App. 1981). The State is no longer required to prove that the defendant broke and entered the premises. Instead, the strictures of that element have been replaced with the general requirement of a trespass on premises through an unlawful entry or an unlawful remaining."
Davis v. State, 737 So.2d 480, 482-83 (Ala. 1999).
Notwithstanding Cooper's defense, the following evidence, if considered in a light most favorable to the prosecution, was sufficient to sustain a conviction.
On the night of October 22, 2001, Parthina Coleman and Herman Daniels were living together in a Birmingham apartment. Both Coleman and Daniels were drug dealers. Coleman was alone in the apartment when the doorbell rang. Someone identifying himself as "Doug" was at the door. Coleman testified that she knew a person named "Doug" who lived in the apartment building, so she unlocked the door. At that time, Cooper and three others burst into the apartment. One assailant, Aaron Fleming, struck Coleman on the head with a pistol, and Cooper held *Page 1156 
her at gunpoint on the couch. The intruders stole a shotgun, cocaine, and $125 dollars from Coleman. While ransacking the apartment, Cooper, now armed with the shotgun, and Freeman, armed with a pistol, saw Daniels returning to the apartment. They ambushed him as he entered the apartment. A fight ensued inside the apartment and shots were fired. Daniels ran from the apartment into the street where he fought with Freeman. Cooper, armed with the shotgun, shot Daniels twice at close range, killing him.
From the above testimony, the jury could have drawn the following inferences: that Cooper entered or remained "unlawfully" in Daniel's home with the intent to commit a robbery or an assault. While in the dwelling or in immediate flight from the dwelling, Cooper killed Daniels by shooting him two times with a shotgun.
Viewing the above evidence in the light most favorable to the prosecution, a rational finder of fact could have found Cooper guilty beyond a reasonable doubt of murder made capital because it occurred during a burglary.
 III.
Cooper contends that the trial court erred in refusing to give written requested jury charges no. 1, 5, 6, 10, and 11.
Cooper raised his objection to the trial court's refusal of requested charges no. 1 and 10 for the first time in his motion for a new trial. Thus, he has failed to preserve his objection for appellate review.
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.
Opportunity shall be given to make the objection out of the hearing of the jury."
Rule 21.3, Ala. R.Crim. P. (emphasis added). See Phillips v.State, 726 So.2d 292, 294 (Ala.Crim.App. 1998) (objection to the trial court's failure to give requested jury charge was untimely when raised for the first time in a motion for a new trial).
After the trial court issued its reasons for denying requested charges no. 5, 6, and 11, the defense argued: "[W]ith all due respect to the Court's thinking, [they do] correctly state the law, we would respectfully object to the Court refusing to give them." (R. 504.) "`"The ground that a jury instruction is a correct statement of the law is insufficient to preserve an objection to the trial court's refusal to give the instruction."'" Vaughan v. Oliver, 822 So.2d 1163, 1177 (Ala. 2001) (quoting Ex parte R.D.W., 773 So.2d 426, 429 n. 3 (Ala. 2000), quoting in turn Knight v. State, 710 So.2d 511, 513
(Ala.Crim.App. 1997)).
Thus, this claim has not been properly preserved for appellate review.
 IV.
Cooper contends that the State used its peremptory challenges to discriminate against female jurors, in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), andJ.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89
(1994), and that the trial court erred by not requiring the State to articulate its reasons for its strikes of females. Cooper argued at trial and on appeal only that the State used 12 of its 15 peremptory strikes to remove women from venire. The jury in Cooper's case was composed of six men and six women.
 "`A circuit court's ruling on a Batson [or J.E.B.] objection is entitled to great deference, and we will reverse a circuit *Page 1157 
court's Batson [or J.E.B.] findings only if they are clearly erroneous.'"
Powell v. State, 796 So.2d 404, 431 (Ala.Crim.App. 1999) (quoting Stokes v. State, 648 So.2d 1179, 1181 (Ala.Crim.App. 1994)).
 "A party making a . . . J.E.B. challenge bears the burden of proving a prima facie case of discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala. 1987); Ex parte Bird, 594 So.2d 676
(Ala. 1991). In Branch, this Court discussed a number of relevant factors a defendant could submit in attempting to establish a prima facie case of racial discrimination; those factors are likewise applicable in the case of a defendant seeking to establish gender discrimination in the jury selection process. Those factors, stated in a manner applicable to gender discrimination, are as follows: (1) evidence that the jurors in question shared only the characteristic of gender and were in all other respects as heterogenous as the community as a whole; (2) a pattern of strikes against jurors of one gender on the particular venire; (3) the past conduct of the state's attorney in using peremptory challenges to strike members of one gender; (4) the type and manner of the state's questions and statements during voir dire; (5) the type and manner of questions directed to the challenged juror, including a lack of questions; (6) disparate treatment of members of the jury venire who had the same characteristics or who answered a question in the same manner or in a similar manner; and (7) separate examination of members of the venire. Additionally, the court may consider whether the State used all or most of its strikes against members of one gender."
Ex parte Trawick, 698 So.2d 162, 167-68 (Ala. 1997).
In Trawick, Trawick asserted a J.E.B. violation because "the State used 11 of its 14 peremptory strikes to remove women from [his] jury, resulting in a petit jury that was composed of 7 men and 5 women." Ex parte Trawick, 698 So.2d at 167. As inTrawick, Cooper,
 "has offered no evidence that the female veniremembers shared only the characteristics of gender, that anything in the type or manner of the prosecutor's statements or questions during the extensive voir dire indicated an intent to discriminate against female jurors, that there was a lack of meaningful voir dire directed at the female jurors, or that female jurors and male jurors were treated differently. He has offered no evidence that the prosecutor had a history of using peremptory challenges in a manner that discriminated against veniremembers of either gender. Instead, [Cooper] has merely emphasized that the State used many of its strikes to remove women from the venire."
Ex parte Trawick, 698 So.2d at 168.
Additionally, in finding no prima facie case of gender discrimination, the trial court stated that it "had a definite understanding for most all of y'all's strikes, both sides, because [the court] take[s] detailed notes during the voir dire selection" and it did "not see any systematic exclusion" (R. 169-70.)
As in Trawick, "[W]ithout more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination." Ex parte Trawick, 698 So.2d at 168.
 V.
Cooper contends that the trial court abused its discretion by not declaring a *Page 1158 
mistrial ex mero moto based on the fact that a juror saw Cooper in shackles as he was leaving the courthouse with officers to go to lunch.
"`"[I]t is not ground for a mistrial that an accused felon appear in the presence of the jury in handcuffs when such appearance is only a part of going to and from the courtroom. This is not the same as keeping an accused in shackles and handcuffs while being tried."'" McWilliams v. State,640 So.2d 982, 995 (Ala.Crim.App. 1991) (quoting Taylor v. State,372 So.2d 387, 389 (Ala.Crim.App. 1979), quoting in turn Evans v.State, 338 So.2d 1033 (Ala.Crim.App. 1976) quoting in turnRhodes v. State, 34 Ala.App. 481, 41 So.2d 623 (1949)). Moreover, there was no showing of prejudice. "Under the circumstances of this case, and in light of the showing of no actual prejudice, we find no abuse of discretion by the trial court in allowing the appellant to be handcuffed for purposes of going to and from the courtroom." McWilliams v. State,640 So.2d at 996.
In addition to the claim set forth above, Cooper argues that he was denied due process when the above assertion is "coupled with the cumulative effect of the prejudicial comments made by the prosecution during the closing arguments and testimony of [Parthina] Coleman stating Cooper had telephoned her from jail." (Cooper's brief at p. 41.)
Cooper appears to be complaining: that 1) Coleman testified that fear of her assailants caused her not to appear at the trial of Cooper's co-defendant Aaron Freeman to testify against Freeman; and 2) that Cooper telephoned Coleman two times before his trial to talk to her about her testimony. There was no objection when the State questioned Coleman on those topics. "This court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court." Myrick v. State, 787 So.2d 713,718 (Ala.Crim.App. 2000). Moreover, Coleman was questioned on those topics by the defense on cross-examination. "A defendant is not permitted to present evidence to the jury on a specific issue and object when the state attempts to introduce evidence on the same point." Morgan v. State, 589 So.2d 1315, 1320
(Ala.Crim.App. 1991). This testimony was admissible and, therefore, it did not contribute to any cumulative due-process violation.
As best we can discern, Cooper also claims that the cumulative effect of the prosecutor's comments during closing argument, considered together with the above assertions, denied him due process. Cooper complains that the prosecutor made improper comments trying to bolster the inference that Cooper is a dangerous person. The prosecutor commented that Charlie Scott, a cell mate of Cooper's, had to be placed in isolation for his own protection because he agreed to testify as to what Cooper had told him about his involvement in the incident involving the killing of Daniels. The trial court sustained the objection to this comment, having just instructed the jury that "it is the testimony . . . from the witness stand . . . that you are to consider. The lawyers are allowed to make reasonable inferences." (R. 557.) The trial court instructed the jury during the jury charge that "any statements, objections, or arguments made by the lawyers for the State or the defendant are not evidence in this case." (R. 575.) We are not convinced the remarks were improper. Nevertheless, "`"[t]here is a prima facie presumption against error when the trial court immediately charges the jury to disregard the improper remarks."'" Daniels v. State,650 So.2d 544, 557 *Page 1159 
(Ala.Crim.App. 1994) (quoting Hagood v. State, 588 So.2d 526,532 (Ala.Crim.App. 1991)). Here Cooper's objection was sustained, and the jury was instructed on how to consider the comments. Thus, Cooper "received a favorable ruling on the only action requested. There was no adverse ruling upon which error can now be predicated." Pressley v. State, 770 So.2d 115, 136
(Ala.Crim.App. 1999), aff'd, 770 So.2d 143 (Ala. 2000), citingStennett v. State, 340 So.2d 65, 67 (Ala. 1976).
 VI.
Cooper contends that the trial court erred in failing to grant a mistrial following alleged prosecutorial misconduct during closing argument. Again Cooper argues that the cumulative effect of the following errors denied him a fair trial.
Cooper contends that the prosecutor "in essence" improperly "vouched for the truth of the matter as to what Scott testified by making statements as to the luxury of the accommodations that Scott had at federal prison and that he had no reason to testify otherwise. Although the trial court sustained the objection, the words could not be taken back from the hearing of the jury." (Cooper's brief at p. 43.) Cooper contends that the prosecutor then committed error by "stating that Scott was `in isolation by himself for his own protection, because he's testifying. It is horrible — no television, no — `Again the objection was sustained, but the cumulative effect upon the jury was out there and impossible to be removed by the instructions of the court." (Cooper's brief at p. 43.) According to Cooper, these comments were inflammatory and designed to prejudice the jury into rendering verdicts of guilt; they cannot be viewed as delivered in the heat of debate; and the comments were not a legitimate inference from the evidence.
This comment was made in rebuttal to the inference that Scott had been dealt lenience in return for his testimony. Moreover, the trial court sustained the objection to the comments. Court adjourned for the day at the end of closing arguments. The following day, when the proceedings resumed, Cooper made a motion for a mistrial on the grounds that the prosecutor had made comments during closing argument that were not based on the evidence, giving the jury the impression that Cooper is dangerous and to be feared. The trial court denied the motion stating, "I believe I sustained the objection, told [the prosecutor] to move on, and I cautioned the jury at least once or twice during closing arguments that the comments of the attorneys are just that, they are comments, and they are not evidence." (R. 570.)
 "`To be timely, a motion for a mistrial must be made "immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial.'" Powell v. State, 631 So.2d 289, 293 n. 2 (Ala.Crim.App. 1993) (quoting Ex parte Marek, 556 So.2d 375, 379 (Ala. 1989))."
Jones v. State, 895 So.2d 376, 379 (Ala.Crim.App. 2004).
As in Jones, the record indicates that although Cooper objected to the prosecutor's comments, "he waited until after closing arguments to make his motion for a mistrial on those grounds. Thus, his motion was untimely, and his arguments were not preserved for appellate review." Jones v. State,895 So.2d at 379.
 VII.
Cooper contends the verdicts of guilt as to both counts charged in the indictment are inconsistent. According to Cooper, because he was a found "guilty of the offense of intentional murder of the *Page 1160 
victim and could not have been further found guilty of capital murder of the same victim in which elements of the same offense were involved." (Cooper's brief at p. 46.) This appears to be the same argument as the argument addressed in Part I of the opinion. We note that Cooper presented no authority for the contention that the two verdicts were inconsistent. Thus, it fails to comply with Rule 28(a)(5), Ala. R.App. P. Moreover, as a inconsistent-verdict claim, it is moot. See Borden v. State,711 So.2d 498, 504 (Ala.Crim.App. 1997), aff'd, 711 So.2d 506
(Ala. 1998) (because the murder conviction was vacated, the claim is moot).
For the reasons set forth above in Part I of the opinion, Cooper's conviction for intentional murder is reversed and this cause is remanded with instructions to vacate that conviction. The conviction for capital murder is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] An assertion that the State failed to establish a prima facie case may preserve for appellate review a ruling on a motion for a judgment of acquittal based on the sufficiency of the evidence. Ex parte McNish, 878 So.2d 1199 (Ala. 2003).