998 So.2d 1092 (2007)
William Tony GARGIS, Sr., and William Tony Gargis, Jr.
v.
STATE of Alabama.
CR-05-1417.
Court of Criminal Appeals of Alabama.
December 21, 2007.
Rehearing Denied February 15, 2008.
Certiorari Denied June 13, 2008 Alabama Supreme Court 1070739.
*1094 Lindsey Mussleman Davis, Florence, for appellants.
Troy King, atty. gen., and Cecil G. Brendle, Jr., asst. atty. gen., for appellee.
WELCH, Judge.
William Tony Gargis, Sr., known as "Big Tony," and his son, William Tony Gargis, Jr., known as "Little Tony," were each indicted on charges arising from a fight in the Colbert County Farmers Co-op.
Count I of the indictment against Big Tony charged him with second-degree assault of Paul Peden, and count II charged him with third-degree assault of Paul Grissom. Under count I, Big Tony was convicted of the lesser offense of third-degree *1095 assault, a violation of § 13A-6-22, Ala. Code 1975, and was sentenced to one year in the Colbert County jail. Big Tony was acquitted of the charge contained in count II.
Count I of the indictment against Little Tony charged him with second-degree assault of Peden and count II charged him with third-degree assault of Grissom. Little Tony was convicted under count I of the indictment for what the trial court defined in its jury charge as the lesser offense of disorderly conduct, a violation of § 13A-11-7, Ala.Code 1975. He was convicted under count II of third-degree assault as charged in the indictment. The trial court sentenced Little Tony to one year in the county jail for his conviction of assault and to three months in jail for his disorderly-conduct conviction, the sentences to be served concurrently.
Big Tony and Little Tony were tried together; their convictions arose out of the same incident at the Colbert Farmers Co-op in Leighton. The evidence adduced at trial tended to show the following.
On the afternoon of May 12, 2004, Big Tony and Little Tony went to the Farmers Co-op to buy some cotton seed. Big Tony went over to a counter while Little Tony went toward the back of the store, where Paul Grissom was sitting. The Gargises and Grissom knew each other, and Big Tony was aware that Grissom owned a snub-nosed pistol.
Witnesses who were at the Farmers Co-op at the time of the incident overheard Big Tony say something about being glad it was going to rain. Grissom, who was not a farmer, made a comment that he had enough water for his horses and that he did not care whether it rained. Bob Corsbie, who considered himself a friend of the Gargises, said that after Grissom made his comment, Corsbie saw Big Tony move toward Grissom and told him "he was the sorriest, laziest son-of-a-bitch down there and it was farmers like [Gargis] that kept [Grissom] in business." (R. Vol.VI, p. 14.) Grissom started to get up from his chair when Little Tony hit him in the side of the head with his fist. Some witnesses said they did not hear Grissom say anything to the Gargises at that time. Big Tony testified that as Grissom was standing up, he said, "Fuck you, mother fucker," and reached for the pocket where Big Tony had known Grissom to carry his gun. (R. Vol.VIII, p. 306.) That is when Little Tony hit Grissom three times, according to Big Tony. Big Tony also testified that he did not know whether Little Tony knew if Grissom carried a gun. Grissom fell back onto the floor in the Co-op's office. He apparently was unconscious for a short time.
When Little Tony hit Grissom, witnesses said, Paul Peden ran up and grabbed Little Tony from behind, trying to break up the confrontation. Little Tony threw Peden down, knocking him into a container holding fence posts. Richard Henry Davis, an employee at the Co-op, said that when Peden stood up, he was wielding a fence post with a sharp end, telling Big Tony and Little Tony to go home or "I swear I'll stick this through you." (R. Vol.IV, p. 194.) Big Tony grabbed a hoe or rake handle out of a barrel, and Peden dropped the post and ran up an aisle toward the door. Big Tony swung the handle, knocking a hole in the ceiling tile as he raised it, and struck a shelf or counter top. Both Big Tony and Little Tony followed Peden up the aisle. Big Tony swung the handle like a baseball bat, hitting Peden on the side of the head, and Peden fell to the floor. There was also testimony from some witnesses that Little Tony hit Peden with his fist. Peden was knocked unconscious in the incident. Big Tony and Little *1096 Tony then left the Co-op, and witnesses in the store called 911.
Peden and Grissom both testified that they were unable to remember the events of the afternoon.

I.
The Gargises contend on appeal that the trial court erred in denying their motions for judgments of acquittal made at the conclusion of the State's case and at the conclusion of all the evidence, because, they say, the evidence showed that both were acting in self-defense. However, they argue in their brief to this Court that the evidence was not legally sufficient to support their convictions, because "there was absolutely nothing but speculation, surmise and hypothesis to implicate the [Gargises'] guilt in this crime." (Gargises' brief at p. 49.) After recounting the evidence presented at trial, the Gargises argue that the State did not prove their guilt beyond a reasonable doubt. They argue:
"The evidence with regard to self-defense clearly points to a case loaded with reasonable doubt as to Gargises' guilt.
"Having reviewed the facts in this case, it should become readily apparent to the Court that there is no legally sufficient evidence which supports the Gargises' convictions. A conviction based on speculation rather than in accord with the legal test for sufficiency of the evidence simply cannot stand.
"Absent a credible shred of evidence with which to rebut the presumption of reasonable doubt to which the [Gargises] are entitled, this Court must find the evidence insufficient to sustain the appellants' conviction in the Court below."
(Gargises' brief at p. 49.)
Although the Gargises couch their argument in terms of sufficiency of the evidence, their entire argument on appeal is essentially that the jury should have believed their evidence of self-defense. This argument, in which an appellant argues that his evidence of innocence is truer and more believable than the State's evidence of guilt, is a weight-of-the-evidence argument. Living v. State, 796 So.2d 1121, 1141 (Ala.Crim.App.2000) ("Weight of the evidence refers to whether the State's evidence is palpably less persuasive than the defense's evidence. Parker v. State, 395 So.2d 1090, 1103 (Ala.Cr. App.1980)."). Although the Gargises preserved a challenge to the weight of the evidence in their motions for a new trial, this Court does not sit as the trier of fact and reweigh the evidence; determining the weight to be afforded each piece of the evidence is well within the province of the jury. Pearson v. State, 601 So.2d 1119, 1124 (Ala.Crim.App.1992). It is well settled that any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [go] to the weight of the evidence and [create a question] of fact to be resolved by the jury." Rowell v. State, 647 So.2d 67, 69-70 (Ala.Crim.App.1994). "`"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App.1989)(quoting Harris v. State, 513 So.2d 79, 81 (Ala. Crim.App.1987), quoting in turn Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931)). "`When the jury has passed on the credibility of evidence tending to establish the defendant's guilt, this Court cannot disturb its finding.'" Rowell, 647 So.2d at 69 (quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982)). "Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case." Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996), aff'd, *1097 719 So.2d 256 (Ala. 1998). As demonstrated below, the State did establish a prima facie case of assault as to each of the Gargises and presented evidence to refute the Gargises' claim that they were acting in self-defense.

A.
The Gargises were each convicted of assault in the third degree  Big Tony as to Peden, and Little Tony as to Grissom. A person commits assault in the third degree if, with intent to cause physical injury to another person he causes physical injury to any person, or he recklessly causes physical injury to another person. See Bradley v. State, 925 So.2d 232, 242 (Ala.2005). A person acts "recklessly" "when he is aware of and consciously disregards a substantial and unjustifiable risk that" an injury will occur. § 13A-2-2(3), Ala.Code 1975.
The evidence in this case shows that Little Tony hit Grissom in the head with his fist three times. The evidence is undisputed that Big Tony hit Peden in the head with a hoe or a rake handle when he swung the handle like a baseball bat at Peden's head. This evidence is sufficient to sustain a conviction for assault in the third degree against both Little Tony and Big Tony.
In support of their self-defense claim, Big Tony testified that he believed Grissom was reaching for a gun when Grissom first stood up. There was no evidence indicating that Grissom was armed, however. Furthermore, there is no evidence indicating that Little Tony believed that Grissom had a gun, and the evidence is undisputed that Little Tony hit Grissom repeatedly. There is no evidence indicating that Grissom ever hit Little Tony or Big Tony.
There is evidence indicating that, after Little Tony pushed Peden off of him when Peden tried to break up the altercation, Peden picked up a sharpened fence post and threatened to "stick" one or both of the Gargises if they did not stop or leave. The evidence is unclear as to exactly when Peden dropped the fence post, but there was testimony from witnesses that Peden dropped the post and ran away from Big Tony as soon as Big Tony grabbed a hoe or rake handle. There was also testimony indicating that Little Tony had blocked Peden's way to the door when Big Tony hit Peden, who was then unarmed, in the head with the handle.
Each witness who testified as to what happened in the Co-op, including Big Tony, saw or heard some things but not others. No one witness was able to testify as to the events in the store from start to finish. Inconsistencies, contradictions, and conflicts in the evidence go to the weight of the evidence and create fact questions that must be resolved by the jury. Chestang v. State, 837 So.2d 867, 871 (Ala.Crim. App.2001).
A review of the eight-volume record in this case shows ample evidence from which, if believed, the jury could have found that Big Tony and Little Tony began the altercation and that neither of them was acting in self-defense when they hit Grissom and Peden with either their fists or the hoe or rake handle. Accordingly, the trial court properly denied the Gargises' motions for judgments of acquittal and allowed the jury to determine whether they had acted in self-defense. The jury resolved the conflicting testimony adversely to the Gargises, and we will not disturb its finding on appeal.

B.
In addition to being convicted for assault in the third degree, Little Tony also was convicted of disorderly conduct, ostensibly *1098 as a "lesser-included offense" of second-degree assault as alleged in count I of the indictment against him. As demonstrated below, however, disorderly conduct is not a lesser-included offense of second-degree assault.
Section 13A-1-9(a), Ala.Code 1975, provides that an offense can be a lesser-included offense of that charged in the indictment if:
"(1) [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
"(2) [i]t consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
"(3) [i]t is specifically designated by statute as a lesser degree of the offense charged; or
"(4) [i]t differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."
Assault in the second degree is defined, in pertinent part, as follows:
"(a) A person commits the crime of assault in the second degree if the person does any of the following:
"(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person.
"(2) With intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or a dangerous instrument.
"(3) He or she recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument."
§ 13A-6-21, Ala.Code 1975.
Disorderly conduct is defined as follows:
"(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
"(1) Engages in fighting or in violent tumultuous or threatening behavior."
§ 13A-11-7, Ala.Code 1975.
In Parham v. City of Opelika, 412 So.2d 1268 (Ala.Crim.App.1982), the Court determined that disorderly conduct was not a lesser-included offense of assault in the third degree because the aggrieved parties (individuals in cases of assault and the public in cases of disorderly conduct), intent, and injury elements were different. It also pointed out that assault offenses are catalogued under the heading "`offenses involving danger to the person,'" while disorderly conduct is catalogued under "`offenses against public order and safety.'" 412 So.2d at 1269. Accordingly, the Court held, disorderly conduct was not a lesser-included offense of third-degree assault. Id.
For the same reasons, disorderly conduct is not a lesser-included offense of second-degree assault. Thus, disorderly conduct was not charged in  or contemplated by  the indictment against Little Tony in this case.
In this Court's opinion in Williams v. State, 961 So.2d 929 (Ala. Crim.App.2006), the Court held that pleading guilty to an offense that was not included in the indictment was a jurisdictional defect that could not be waived. In Williams, it was first determined that the defendant's guilty-plea conviction for unlawful possession of a controlled substance *1099 was not included in the offense charged in the indictment, i.e., attempted unlawful possession of a controlled substance. Because the indictment did not charge the defendant with the completed offense of unlawful possession, we held that the trial court did not have jurisdiction to accept the defendant's guilty plea to unlawful possession of the completed offense. The cause was remanded to the trial court for the conviction to be set aside. The Williams opinion did not address the impact the Alabama Supreme Court's opinion in Ex parte Seymour, 946 So.2d 536 (Ala. 2006), had on cases like Williams, however.
In Seymour, the Alabama Supreme Court expressly overruled prior Alabama law recognizing an indictment as the circuit court's source of jurisdiction. Instead, the Supreme Court held, "a defect in [an] indictment could not divest the circuit court of its power to hear the case." Id. at 538. "Under our holding in Seymour, a defect in a criminal indictment no longer deprives the trial court of jurisdiction, as it had under the common law, but instead is a nonjurisdictional error that may be waived." Ex parte Jenkins, 992 So.2d 1248, 1250 (Ala.2007).
In light of Seymour and its progeny, the line of cases of which Williams is a part that hold that failure to allege an essential element of the charged offense constitutes a jurisdictional defect that cannot be waived is no longer the law in Alabama. Therefore, we now explicitly overrule that line of cases. The trial court in this case had subject-matter jurisdiction to try, convict, and sentence Little Tony for disorderly conduct,[1] although that offense was not specifically charged in the indictment. Seymour, supra.
The dissent contends that this holding will result in convictions for higher offenses than those alleged in indictments against defendants or may even lead to a defendant's conviction of an offense without an indictment. Such extreme results are unlikely. Like with scores of other possible errors or abuses of discretion that may arise during the course of a trial, the remedy to a prosecution of an offense not contained in the indictment is for defense counsel to make an objection. See Rule 15.2, Ala. R.Crim. P. The objection would raise the issue before the trial court and preserve the issue for appellate review.
Little Tony did not object to his conviction for disorderly conduct. Therefore, pursuant to Seymour and its progeny, any issue involving the validity of Little Tony's disorderly-conduct conviction and sentence is waived.

II.
Big Tony contends that the trial court erred in imposing the maximum possible sentence applicable in his case.
This Court generally will not review sentences imposed within statutorily prescribed limits. Wilson v. State, 830 So.2d 765, 771 (Ala.Crim.App.2001). Furthermore, determinations for punishments to be imposed for different crimes are purely legislative. Id., citing Rummel v. Estelle, 445 U.S. 263, 275-76, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).
Big Tony was convicted of third-degree assault and sentenced to one year in the county jail. Assault in the third degree is *1100 a Class A misdemeanor. § 13A-6-22(b). Class A misdemeanors are punishable by not more than one year in the county jail. § 13A-5-7(a)(1). Because Big Tony's sentence fell within the applicable limits prescribed by the Alabama Legislature, we cannot say that the trial court erred in imposing the sentence against him in this case.

III.
Little Tony contends that the trial court erred in denying his motion to allow him to be transported from the jail to the courthouse in street clothes and without shackles. Little Tony acknowledges that the trial court did not allow him to be in restraints while he was in the courtroom.
Whether a defendant may be handcuffed for purposes of being taken to and from the courtroom is left to the discretion of the trial court. McWilliams v. State, 640 So.2d 982 (Ala.Crim.App.1991).
"[I]t is not ground for a mistrial that an accused felon appears in the presence of the jury in handcuffs when such appearance is only a part of going to and from the courtroom. This is not the same as keeping an accused in shackles and handcuffs while being tried." Evans v. State, 338 So.2d 1033, 1037 (Ala.Crim. App.1976); see also Cooper v. State, 912 So.2d 1150, 1158 (Ala.Crim.App.2005). Furthermore, absent a showing of actual prejudice, the trial court will not be found to have abused its discretion in allowing an accused to go to and from the courtroom in handcuffs. Id.
Little Tony was not restrained while in court. He seems to base his argument on the premise that jurors might have seen him in shackles while he was going from the jail to trial. He does not, however, present any evidence that any jurors did, in fact, see him while he was being transported from the jail.
Little Tony was indicted for the crime of second-degree assault, a Class C felony. He has shown no actual prejudice arising from the fact that he was shackled while going to and from the courtroom. Therefore, the trial court did not abuse its discretion in denying Little Tony's motion to be transported to and from the courtroom in street clothes and without shackles.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN and SHAW, JJ., concur. BASCHAB, P.J., concurs in the result in part and dissents in part, with opinion, joined by WISE, J.
BASCHAB, Presiding Judge, concurring in the result in part and dissenting in part.
I respectfully dissent as to that portion of the majority opinion that purports to overrule this court's decision in Williams v. State, 961 So.2d 929 (Ala.Crim.App. 2006). The majority states, in part:
"The Williams opinion did not address the impact of the Alabama Supreme Court's opinion in Ex parte Seymour, 946 So.2d 536 (Ala.2006), had on cases like Williams, however.
". . . .
"In light of Seymour and its progeny, the line of cases of which Williams is a part that hold that failure to allege an essential element of the charged offense constitutes a jurisdictional defect that cannot be waived is no longer the law in Alabama."
998 So.2d at 1099.
When I authored Williams, I was well aware of the supreme court's decision in Seymour. In fact, Judge Shaw dissented in Williams based on Seymour. However, *1101 I did not believe then, and I still do not believe, that Seymour applies to a situation such as the one in this case. Seymour is not a cure-all for any and all indictment-based challenges.
There is a distinction between cases in which there has not been an indictment for an offense and cases in which the indictment is defective because it omits an essential element of the offense. Williams applies to the former situation, and Seymour applies to the latter. Applying the majority's interpretation of Seymour, a defendant could be indicted for the most minor felony offense and convicted of the highest felony offense of capital murder and sentenced to death. In fact, taking the majority's reasoning to its logical conclusion, a defendant could be convicted of an offense without ever being indicted.
The indictment in this case was not defective. Therefore, Seymour does not apply. This is a case where the appellant was not indicted for, and therefore not on notice that he might be convicted of, disorderly conduct. Under the reasoning of Williams, Little Tony's conviction for disorderly conduct was inappropriate. Accordingly, I respectfully dissent as to that portion of the majority opinion that purports to overrule this court's decision in Williams, and I concur in the result as to the remainder of the opinion.
WISE, J., concurs.
NOTES
[1] We recognize that disorderly conduct is a misdemeanor over which, in and of itself, the circuit court would not have had jurisdiction. However, the circuit court did have original jurisdiction over the misdemeanor offense of disorderly conduct in this case because it arose from the same incident as the felony charges brought in this case. § 12-11-30(2), Ala.Code 1975.