WELCH, Judge,
concurring in part and dissenting in part.
Lavernon Anthony Page appealed his convictions for first-degree assault, a violation of § 13A-6-20, Ala.Code 1975; first-degree burglary, a violation of § 13A-7-5, Ala.Code 1975; and discharging a gun into an occupied dwelling, a violation of § 13A-11-61, Ala.Code 1975. The majority affirms these convictions in an unpublished memorandum. I concur with the majority’s affirmance of Page’s convictions for first-degree assault and first-degree burglary. I respectfully dissent, however, from the majority’s affirmance of Page’s conviction for discharging a gun into an occupied dwelling; as to that conviction I would reverse and render a judgment for Page.
Among the issues Page raises on appeal is his contention that the trial court erred in denying his motions for a judgment of acquittal as to the charge of discharging a gun into an occupied dwelling because, he says, the evidence was insufficient to find him guilty of that offense. The statute setting out the offense of discharging a firearm into a building, train, etc., § 13A-ll-61(a), provides:
“No person shall shoot or discharge a fireai'm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state.”
*225 Specifically, Page argued on appeal that because the evidence admitted at trial indicated that he was standing inside the doorway of the victim’s apartment when he fired his pistol, the State did not prove the necessary element of discharging a projectile into an occupied dwelling.
Initially, because I would reverse his conviction, I must address two arguments presented by the State on appeal not addressed by the majority. The State’s assertion on appeal — that the intent of § 13-11-61 is to “punish defendants who discharge weapons inside a dwelling, regardless of whether the defendant was outside of the dwelling or inside of it” — is not well-taken. (State’s brief, at p. 27.) “Into” is “used as a function word to indicate entry, introduction, insertion, superposition, or inclusion.” Merriam-Webster’s Collegiate Dictionary 656 (11th ed.2003). Thus, a gunshot cannot be fired “into” a dwelling unless it originates from “outside” the dwelling. “[T]he unit of prosecution in a case that involves discharging a firearm into an occupied dwelling is the act of discharging the firearm into that dwelling.” McPherson v. State, 933 So.2d 1114, 1118 (Ala.Crim.App.2005) (emphasis added). “Section 13A-11-61 seeks to punish all individuals who shoot into an occupied or unoccupied [dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state].” Hawkins v. State, 621 So.2d 400, 401 (Ala.Crim.App.1993) (emphasis added).
Also, contrary to the State’s assertion on appeal, I find that Page did preserve a challenge to the sufficiency of the evidence when he objected at the end of the State’s case and at the end of the defense’s case stating: “I have to move for a directed verdict of acquittal. They have not put on any- testimony that would entitle the case to go to the jury on the charge on the indictments.” (R. 116.) I believe this is similar to other poorly expressed motions that the Alabama Supreme Court has held to preserve error. See Ex parte McNish, 878 So.2d 1199, 1200 (Ala.2003) (holding that statement “I make a motion for a judgment of acquittal on the grounds that the State has not proven the case beyond a reasonable doubt,” and written motion for a judgment of acquittal filed in open court stating, “as grounds for said motion would show unto the court the evidence is insufficient to support a finding of guilt beyond a reasonable doubt to the charged offenses” preserved a challenge to the State’s evidence); Ex parte Parks, 923 So.2d 330 (Ala.2005).
The following evidence was presented in Page’s case. The victim, Adrian Hunter, lived in Tenisha Shoemaker’s apartment with Tenisha and her two-year-old child. At approximately 11:25 on the night of August 24, 2007, Hunter, Tenisha, Lakeisha Shoemaker — Tenisha’s sister — and Lakeisha’s two children — both under the age of five — were inside Tenisha’s apartment when Page appeared at the open door of the apartment. A. provocative verbal exchange began between Hunter and Page and continued as the men moved from inside the apartment into the yard outside the apartment. Once outside the apartment, Page and Hunter began to push and shove each another. When the altercation ended, Hunter, Tenisha, Lakeisha, and the children went back inside Tenisha’s apartment and shut the door. Within two or three minutes, Page returned to Tenisha’s apartment with a pistol. The following testimony was presented regarding what transpired next.
Tenisha testified that Page “kicked [the apartment door] in and immediately [Page] shot [Hunter]” in the stomach. (R. 83.) Tenisha specifically testified:
*226 “Q. [The prosecutor:] All right. And you say [Page] shot [Hunter]. Who did you see shoot [Hunter]?
“A. [Tenisha:] Lavernon [Page].
“Q. And [Page] was standing sort of outside the door there when the shot was fired?
“A. [Page] was inside the doorway.”
(R. 84.) After shooting Hunter, Page fired a second shot that missed Hunter, and Hunter, though shot in the stomach, fled through the back door of the apartment. Page’s location when the second shot was fired was not the subject of questioning at trial. However, Tenisha testified that Page “ran out the front door” after Hunter fled through the back door. (R. 84.)
Hunter testified that after the initial altercation in the yard with Page, he returned to the apartment with Tenisha, Lakeisha, and the children. He stated that within two minutes Page “just kicked in the door ... [and] just started shooting.” (R. 98.) Hunter stated that he was shot in the stomach, and he testified that, “I told [Page] he shot me. He raised the gun up and I took off running and he shot again.” (R. 99.) Hunter was asked, “[D]id you at any time give [Page] permission to be in your place, in your apartment?” and Hunter answered “[n]o, sir.” (R. 100.)
Lakeisha Shoemaker testified that within three or four minutes of returning to the apartment from the yard, Page “had kicked the door and he was already shooting.” (R. 111.) Lakeisha testified regarding the second shot: “[Page] was walking away, but he — I guess he thought about something and he turned around and shot again.” (R. 112.) Page chased Hunter as Hunter ran toward the back door, but “he stopped ... and he walked out the front door.” (R. 113.)
Officer Theodore Johnson of the Mobile Police Department testified that the police discovered a bullet lodged inside one of the interior walls of the apartment and discovered two shell casings. One shell casing “was just outside the door frame ... and one was inside of the residence behind a shelf that the TV was sitting on.” (R. 114-15.)
Page testified regarding the shooting that he “[c]ame in the door, I shot, I hit him, he ran to the back, so I ran behind him to make sure he wasn’t getting nothing. Once I [saw] he couldn’t defend himself or get nothing else, I left out the front.” (R. 141-42.)
The majority affirms this conviction in an unpublished memorandum based the following facts and analysis:
“In this case, the State presented evidence that Page kicked in the door to Shoemaker’s apartment and fired a shot striking Hunter, who was in the apartment. (R. 98, 111). Officer Theodore Johnson, of the Mobile Police Department, testified that he located a shell casing from a bullet outside the door frame of the apartment. (R. 114). Based on the testimony that Page kicked in the door of the apartment and fired a shot and the fact that a shell casing from a fired bullet was located outside the door frame to the apartment, the jury could have reasonably concluded that Page was outside the apartment when he fired the first shot at Hunter.1 Consequently, the question of whether Page was guilty of discharging a gun into an occupied dwelling was properly left for the jury’s determination. Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996).
“1 Page’s sufficiency argument appears to be based on Tenisha Shoemaker’s testimony that Page was ‘inside the doorway5 when the shooting occurred. ‘It is well settled that any “inconsistencies *227 and contradictions in the State’s evidence, as well as [any] conflict between the State’s evidence and that offered by the appellant, [go] to the weight of the evidence and [create a question] of fact to be resolved by the jury.” ’ Gargis v. State, 998 So.2d 1092, 1096 (Ala.Crim.App.2007) (quoting Rowell v. State, 647 So.2d 67, 69-70 (Ala.Crim.App.1994)). Because Shoemaker’s testimony conflicted with the State’s physical evidence, this conflict created a question of fact for the jury.”
Based on the above, the majority did acknowledge that Tenisha testified that Page was inside the apartment when he discharged his weapon. However, the majority apparently took the view that the testimony that Page began shooting as soon as he kicked the door open meant that Page was discharging his weapon from a location outside the apartment. Thus, it appears that the majority found this to be a case of conflicting evidence to be resolved by the jury, which is inviolable on appeal. As to this rationale, I respectfully disagree. I do not believe the charge of discharging a weapon into an occupied dwelling should have been submitted to the jury, because I do not believe the State proved the necessary element of discharging a projectile “into ” an occupied dwelling.
During the State’s direct examination of eyewitness Tenisha Shoemaker, the State asked the following leading question: “And [Page] was standing sort of outside the door there when the shot was fired?” Tenisha Shoemaker responded, “[Page] was inside the doorway” when he discharged his weapon. (R. 84.) Thus, the fact that Page was inside the doorway when he fired the gun was brought out by the State on direct examination of its own witness and was not disputed by any evidence. Although other witnesses testified that Page began shooting as soon as he kicked open the door, I do not believe that a reasonable inference from this testimony is that Page was outside the apartment when he began shooting. Other than Ten-isha, no witness broached the subject of where Page was standing — inside or outside the apartment — when he discharged his weapon. Thus, the fact that Page was inside the apartment doorway when he discharged his weapon was the only evidence before the jury regarding Page’s location when the shot was fired.
“Inside” is defined as “an interior or internal part or place ... the part within ... on the inner side of.” Merriam-Webster’s Collegiate Dictionary 647 (11th ed.2003). Thus, I believe that Page’s being inside a doorway constitutes his being inside the apartment, and, thus, Page’s conduct was not within the scope of § 13A-11-61, Aa.Code 1975.
The location of the shell casings — one near, but outside the apartment door, and one inside the apartment — would not have allowed the jury to draw an inference that Page was outside the apartment when he fired the weapon and that he fired into the apartment without some testimony regarding the position of the shell casings that allowed such an inference be drawn. It is common knowledge that shell casings are ejected from automatic and semi-automatic weapons — although this fact was not brought out at trial. However, the use of the location of the shell casings as evidence of guilt would require knowledge of the specific type of weapon used and testimony from an expert to explain the trajectory of an ejected shell casing from the type of pistol used, as well as other factors, such as the effect of the angle the weapon was held when fired. Absent this evidence, the testimony regarding the location of shell casings could not be used to infer that Page was inside or that he was outside the *228 apartment when he discharged his weapon. It is not a matter within the common knowledge of a juror.
Thus, I do not see a conflict in the evidence. The statute prohibits shooting into a dwelling from a location outside the dwelling. The only evidence presented to the jury addressing the issue whether a weapon was discharged “into” an occupied dwelling was Tenisha’s testimony that Page was inside the doorway when he fired. Because there was no other evidence regarding Page’s location when he discharged his weapon, the charge should not have been submitted to the jury.
Page’s conduct of shooting once he was within the apartment is not within the purview of the statute. I would reverse Page’s conviction for discharging a weapon into an occupied dwelling and render a judgment of acquittal.